**Leonard H. GARRETT, Plaintiff,**

v.

**Elliott L. RICHARDSON, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 19652-2.**

United States District Court,
W. D. Missouri, W. D.

Jan. 27, 1972.

Harvey L. McCormick, The Legal Aid and Defender Society of Greater Kansas City, Kansas City, for plaintiff.

Bert C. Hurn, U. S. Atty., Thomas H. Stahl, Asst. U. S. Atty., for defendant.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND JUDGMENT AFFIRMING DECISION OF DEFENDANT

COLLINSON, District Judge.

This is a proceeding for review of a disability determination made by defendant adversely to plaintiff on May 10, 1971, pursuant to 42 U.S.C. § 405(g).

Garrett applied for disability benefits on May 7, 1970, claiming that he had become unable to work on November 7,

1969, because of "Arthritis of spine, Emphesema [sic], Bronochial [sic] Asthma." The claim was denied on August 17, 1970; and reconsideration was denied on November 14, 1970. On December 14, 1970, plaintiff filed a Request for Hearing, which was held on February 11, 1971. On February 25, 1971, the hearing examiner entered his order denying the claim. Plaintiff appealed to the Appeals Council, who declined review adopting the hearing examiner's opinion. The instant action was filed on August 24, 1971.

Both parties have filed motions for summary judgment, an appropriate means of bringing this matter on for decision. See Johnson v. Gardner, (C.D. Cal.) 284 F.Supp. 230, 233, and cases cited therein.

## HISTORY AND MEDICAL EVIDENCE

The plaintiff was born on March 3, 1910. He testified that he had been married for about 30 years and that he had no children. He and his wife live in a rented three-room house in Sugar Creek, Missouri. Plaintiff stated that he attended the third grade, but did not know whether or not he had completed it. Prior to entering the Army in 1942, and after being discharged, Garrett worked at a succession of odd jobs, the majority involving hauling wood. On August 29, 1950, plaintiff began work as a laborer at the Missouri Portland Cement Company. After three years he was transferred to the carpenter shop, where he shortly became head carpenter. His work there involved some heavy lifting and bending and the use of various power tools. He remained at that job until November 7, 1969, at which time he claims to have become disabled.

Plaintiff testified that since he has been unable to work, he spends most of his day lying on the divan at home watching television. He does no housework. Occasionally, he visits his brother-in-law and shops for groceries. He drives about three or four miles a day. Since 1969, he has taken one trip to Springfield, Missouri, in order to get his car painted.

Garrett stated that he "can hardly stand up. I can hardly walk. So weak"; that his legs "hurt so bad at night"; that his "ankles and face swell up;" and that he takes "ten or twelve different kinds of medicine."

Mrs. Garrett testified that her husband staggered around the house on occasion; and that he complained of pain in his knees, legs and back; that he was short of breath three or four times a day; and that he was nervous, as evidenced by shaking spells.

Garrett further testified that he was unable to do furniture refinishing, which he had done as a hobby before he became disabled; and that he is unable to walk for any distance.

Garrett stated that he has had arthritis of the spine for several years; but that his physician, Dr. Higgins, told him it was not the crippling kind; and that he has emphysema which causes him to be short of breath constantly.

Plaintiff stated that on November 9, 1969, when he went into the bathroom, he sneezed or coughed and started bleeding profusely through his mouth and nostrils; that he was hospitalized for a period of five days; and that since that time he has been unable to work.

W. W. Woodward, M.D., company doctor for Missouri Portland Cement, in a report dated January 19, 1967, diagnosed Garrett's condition as:

1. Chronic bronchitis.

2. Bronchospasm, secondary to number one with moderate dyspnea on heavy exertion.

3. Peripheral vascular disease with mild intermittent claudication.

4. Psychophysiologic reaction with anxiety syndrome.

Garrett's complaints at that time "were primarily shortness of breath and discomfort in his legs."

Dr. Woodward stated:

To the best of my ability to discern the patient's condition at this moment,

I would not feel that he is totally disabled. It is certain that he has some limitation of heavy activity on the basis of his peripheral vascular disease and his bronchitis. I do not think Mr. Garrett is intentionally malingering, but feel that he is thoroughly convinced that his medical problems are of greater severity than can be measured objectively, and it [sic] quite concerned about the above mentioned symptoms. I can really see no objective reason why Mr. Garrett could not be gainfully employed, at least in a light to moderate job situation.

Garrett was re-examined by Dr. Woodward on February 3, 1970, who stated in a report dated February 11, 1970:

It is very difficult to judge just how incapacitated Mr. Garrett is. He has a quite evident recurrent and chronic bronchitis. He has very minimal evidence of air trapping, but no evidence of genuine emphysema of any real significance. He is subjectively, however, incapacitated; and I am sure that he certainly considers himself unable to work without conscious malingering. The lab evaluation discloses very little in the way of objective abnormality. The major findings are the retardation of his expiratory flow rate and relatively low first second vital capacity. While we see many people with pulmonary function studies worse than this, who are able to work, the subjective component of this illness is always prominent and the degree of respiratory insufficiency that he has is subjectively crippling to him.

I rather doubt that Mr. Garrett will be able to return to full-time employment in the sense of his feeling able to discharge the usual duties of his work. He objectively has sufficient evidence of disease to document abnormalities in the respiratory system. He has moderate evidence of peripheral vascular disease which is probably contributory. I believe he is a rather dependent personality and tolerates

discomfort of various sorts rather less well than the average individual. With his personality type and these abnormalities in mind, I would suggest that he be placed on early retirement.

Garrett's personal physician, Leonard W. Higgins, D.O., submitted a report dated May 15, 1970, in which he diagnosed plaintiff's condition as "Emphysema, fibrosis and hemoptysis." He also submitted a copy of a hospital record showing that plaintiff was a patient at the Plaza Hospital from November 9, 1969 to November 14, 1969. An X-ray examination on November 10, 1970, indicated the existence of emphysema and the possibility of early silicosis.

A later report from Dr. Higgins dated September 1, 1970, diagnosed Garrett as having emphysema, fibrosis and hemoptysis, and kidney and bladder infection. In a letter dated December 16, 1970, Dr. Higgins stated:

Mr. Leonard Garrett has been under my care from November 7, 1969, for Hemoptysis, fibrosis and Emphysema, with limited vital capacity. Do [sic] to his physical condition I feel he is unable to work and have recommended retirement.

On September 22, 1970, plaintiff was examined by L. A. Hollinger, M.D., who, in a report dated September 24, 1970, stated that he had seen Garrett on a disability evaluation; that his chief complaint was "shortness of breath; and that his health generally "has been good." Plaintiff was given "an exercise tolerance test" which "[h]e tolerated . . . very well, showed only minimal dyspnea but did complain markedly of leg weakness." An interpretation of a Pulmonary Function Study revealed that:

The ventilatory study is abnormal demonstrating only a very minimal degree of airways obstruction. The lung volume study is abnormal and demonstrates a minimal increase in both the residual volume and total lung capacity. The arterial blood gas

study demonstrates adequate alveolar ventilation with a mild respiratory alkalosis. Oxygen saturation is normal. Chest X-rays revealed that none of the "radiological criteria for pulmonary emphysema" were present.

Dr. Hollinger summarized his findings as follows:

[T]his patient does have a history compatible with chronic bronchitis with only the presence of minimal airways obstruction. He does describe episodes of acute bronchitis but these are very minimal and infrequent. There is no evidence at this time to substantiate a diagnosis of pulmonary emphysema. According to the A.M. A. Expert Committee for the rating of respiratory impairment this patient would be placed in Class 1 or zero per cent impairment. There would appear to be a considerable functional component to his complaint of dyspnea and it is not substantiated by either pulmonary or cardiovascular studies. I can therefore find no reason to place any restrictions on this patient's physical activities. His prognosis would appear to be good as far as his cardio-pulmonary status is concerned. It is my feeling that this patient should become more active, lose weight and, in turn, should note improvement in his complaints. At the present time there is no obvious reason why this patient could not be employed.

Finally, Garrett was seen by Carleton J. Lindgren, M.D., a psychiatrist, who, in a report dated October 9, 1970, stated:

At the present time Mr. Garrett does not appear to have any severe mental problem which would hinder him from doing any competitive work.

The transcript submitted for review in this Court does not reflect any vocational evaluation or evidence. Garrett's employment record reveals that he worked only in heavy and unskilled labor jobs, and that he has at most a third-grade education.

## DECISION OF THE SECRETARY

On May 10, 1971, the Appeals Council determined that the hearing examiner's report was correct, and declined further review, thereby adopting the hearing examiner's decision as the final decision of the Secretary.

The hearing examiner outlined the specific issues before him as whether the claimant was under a "disability" as defined in the Social Security Act; and, if so, when such disability occurred; and whether the special earnings requirements had been met. The claimant's earnings record showed that the special earnings requirement had been met.

In evaluating the medical evidence, the hearing examiner stated:

The medical reports of record do not contain any diagnosis of arthritis although the claimant testified that he had swelling in his ankles and pain in his knees and legs and back.

Regarding claimant's complaint of emphysema and shortness of breath, it appears that his treating physician, Dr. L. W. Higgins, D.O., has repeatedly diagnosed claimant's condition as hemoptysis . . . fibrosis of the lungs and emphysema. On the other hand, physical examinations by Dr. W. W. Woodward, M.D., a Diplomat of the American Board of Internal Medicine in January 1967 and February 1970, states that there is no evidence of genuine emphysema. Additionally, the claimant was examined in September 1970 by Dr. L. A. Hollinger, M.D. . . . a Diplomat of the American Board of Internal Medicine, who conducted breathing tests and reported that there was no evidence the claimant had emphysema. It appears that at most the claimant has a condition of bronchitis with very minimal impairment of his breathing capacity. Both Dr. Woodward and Dr. Hollinger reported there was no obvious reason why the claimant could not work. Dr. Lindgren

. . . found claimant to have no psychiatric illness and believed the claimant had little motivation to work because he was receiving disability payments from an insurance company.

The hearing examiner cited Dr. Higgins' statement that Garrett was unable to work due to his physical condition; however, he gave little weight to it because "his statement is inconsistent with the objective medical findings by other physicians." The hearing examiner also discounted Dr. Higgins' findings of emphysema and fibrosis as "not justified."

In conclusion, the hearing examiner stated:

> On the basis of all the evidence of record it is the opinion of this Hearing Examiner that although the claimant has some medical problems, these are not of such severity as to meet the definition of disability under the Social Security Act, and therefore, claimant is not entitled to the establishment of a period of disability or to disability insurance benefits. . . .

## STANDARDS ON REVIEW

■ The scope of the Court's review of the findings of the Secretary is defined in 42 U.S.C. § 405(g) in the following terms:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.
>
> . . . . . .

The decision of the Secretary may be affirmed on review by this Court if the following seven standards are met:

(1) the hearing procedures were fair and lawful;

(2) evidence was received on the material issues;

(3) the findings of fact are supported by substantial evidence;

(4) the findings of fact are sufficient to resolve the crucial factual issues;

(5) the correct legal standards were applied in determining the ultimate issues;

(6) all regulations of defendant, applied in arriving at the decision, were lawful and valid as applied in this case; and

(7) it appears in finding the facts that claimant was required to sustain no greater burden of proof than proof by a preponderance of the evidence.

Bethune v. Finch, (W.D.Mo.) 302 F. Supp. 425, 433, and cases cited therein. See also Weaver v. Finch, (W.D.Mo.) 306 F.Supp. 1185, 1189; Dunn v. Richardson, (W.D.Mo.) 325 F.Supp. 337, 342.

The standards of disability applicable in these proceedings are those set out in 42 U.S.C. §§ 416(i) and 423(d) (1), which read as follows:

> The term "disability" means—
>
> (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . .

■ There are basically two steps to a determination of disability: (1) a finding of a medically determinable mental or physical impairment; and (2) a finding that the impairment precludes the person from engaging in substantial gainful activity. Griffin v. Finch, (D. S.C.) 303 F.Supp. 162, 166; Thomas v. Celebrezze, (C.A. 4) 331 F.2d 541.

■ The Secretary in effect held that the objective evidence—clinical and laboratory findings—did not indicate a physiological abnormality within the meaning of "disability" as defined in the Social Security Act. The record indicates that there is little question, if any, that Garrett suffers from pulmo-

nary disease, various diagnoses being emphysema, bronchitis (minimal chronic and acute), bronchospasm, peripheral vascular disease, fibrosis, and hemoptysis. It is apparent from the objective manifestations alone that plaintiff suffers a medically determinable physical impairment within the meaning of the Act.

In order to support the Secretary's finding that plaintiff's impairment is not severe enough to preclude him from substantial gainful employment, there must be substantial evidence. Celebrezze v. Bolas, (C.A. 8) 316 F.2d 498. Substantial evidence means such evidence as reasonable minds would accept as adequate in support of a conclusion. Celebrezze v. Bolas, *supra;* Cummins v. Celebrezze, (W.D.Ark.) 222 F.Supp. 285; Domann v. Secretary, (W.D.Mo.) 220 F.Supp. 252.

Both Dr. Woodward and Dr. Hollinger reported that their examinations revealed minimal objective abnormality. Dr. Woodward found that Garrett was "subjectively" disabled because of his "dependent personality" and his inability to tolerate discomfort. Dr. Hollinger found "no reason to place any restrictions on [Garrett's] physical activities." Dr. Higgins found that Garrett suffered emphysema, fibrosis of the lungs and hemoptysis, and recommended retirement. However, Dr. Higgins diagnoses were not confirmed, nor supported, by the other doctors.

Moreover, although subjective symptoms must be considered by the Secretary in making his determination, they are not controlling in the face of the objective evidence contrary to it. The record reflects that the Secretary took appreciable cognizance of the evidence of subjective symptoms.

Under these circumstances, there is substantial evidence to support the Secretary's findings of fact. The record reflects that the seven standards outlined above have been met. Therefore, it is

Ordered that plaintiff's motion for summary judgment be denied, and defendant's motion for summary judgment be granted; and

Ordered and adjudged that the decision of the Secretary herein denying benefits be, and it hereby is, affirmed.