Ralph J. CHENOWETH, Plaintiff,

v.

Caspar WEINBERGER, Secretary of the Department of Health, Education and Welfare, Defendant.

No. 73 CV 426–W–1.

United States District Court, W. D. Missouri, W. D.

Oct. 20, 1976.

James A. Gramling, Jr., The Legal Aid and Defender Society, Kansas City, Mo., for plaintiff.

Bert C. Hurn, U.S. Atty., Gene C. Napier, Asst. U.S. Atty., Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

In our order of June 18, 1974, *Chenoweth v. Weinberger*, 376 F.Supp. 1338 (W.D.Mo. 1974), we denied the defendant's motion to dismiss and remanded the case back to the Secretary to determine whether the requirements of *res judicata* under 20 CFR 404.937(a) were met, or whether the evidence met the criteria for the reopening of cases under 20 CFR 404.957 and 404.958. The matter is again before us. On remand the Secretary of Health, Education, and Welfare found that "good cause" did not exist to reopen petitioner's February 21, 1968 application and further that claimant's request for a hearing should be dismissed because of the application of the "*res judicata* doctrine." This matter presently pends on plaintiff's motion for summary judgment and defendant's motion for dismissal.

Plaintiff asserts (a) that a review of the merits should not be barred by *res judicata*; (b) that 20 CFR 404.957 should not bar the reopening of the application; and (c) that the Secretary's prior finding of no disability on or before June 30, 1967 is not supported by substantial evidence. The government contends this Court does not have jurisdiction to review this case because of the application of Section 205(h) of the Social Security Act, as amended, 42 U.S. C.A. § 405(h).

For the reasons set forth below, we find and conclude that review of this action is not barred, as suggested by the Secretary. We further find and conclude that the decision of the Secretary denying benefits to the plaintiff must be reversed. Accordingly, the Secretary's motion to dismiss will be denied and he will be directed to grant plaintiff's claim for disability benefits.

### I. *Background of the Controversy*

Mr. Chenoweth is a 56 year old man with only an 11th grade education and no other formal training. On February of 1947 he received a medical discharge from the army as a result of ailments including ulcers and hypertension. He filed his initial *pro se* application for disability benefits under the Social Security Act on October 2, 1963, alleging his inability to work since August 15, 1962, because of emphysema, heart spasms and nerves. That application was denied on November 18, 1963. A second *pro se* application was filed on March 16, 1966, alleging inability to work since August 15, 1962, due to emphysema, heart spasms, nervous condition and the complete loss of hearing in his left ear. That application was denied on September 2, 1966. A third *pro se* application was filed on February 21, 1968, alleging his inability to work since October, 1963 as a result of emphysema, nervous condition, and heart spasms. That application was denied on May 17, 1968. Plaintiff filed a fourth *pro se* application on July 12, 1971 alleging an inability to work since 1961, due to chronic emphysema, ulcers, hernia, and a heart condition. That application was denied initially and again on reconsideration. On November 4, 1972 plaintiff filed a request for a hearing which was dismissed on January 17, 1973 on the basis of *res judicata*. This civil action was filed on July 31, 1973.

### II. *Applicability of the Doctrine of Res Judicata*

In pertinent part, § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), provides as follows:

Any individual after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such time as the Secretary may allow. . . .

The Secretary maintains that the final decision in this case within the meaning of § 405(g) is the decision of the administrative judge's determination on May 17, 1968. The Secretary contends that such decision became final by the failure of plaintiff to appeal and to file within sixty days of that date, an action seeking review of that deci-

sion in the appropriate federal court. Therefore, contends the Secretary, the dismissal of plaintiff's July 12, 1971 application for benefits was proper by reason of the application of *res judicata* doctrine pursuant to 20 CFR § 404.937(a), which provides that the hearing examiner may upon his own motion dismiss a hearing request:

. . . where there has been a previous determination or decision by the Secretary with respect to the rights of the same party on the same facts pertinent to the same issue or issues which has become final either by judicial affirmance or, without judicial consideration, upon the claimant's failure to timely request reconsideration hearing, or review, or to commence a civil action with respect to such determination or decision.

Although that regulation would appear to be dispositive of the issues presented in this action, a closer scrutiny of other regulations applicable to the reopening of prior determinations of the Secretary indicates that the Secretary's argument is not tenable.

20 CFR § 404.957 provides that an initial or reconsidered decision of a hearing examiner or of the Appeals Council which is otherwise final,[1] may be reopened in the following pertinent circumstances:

(b) . . . within 4 years after the date of the notice of the initial determination . . . to the party to such determination, upon a finding of good cause for reopening or decision, or

(c) At any time when . . .

(8) Such initial or reconsidered determination or decision is unfavorable in whole or in part, to the party thereto but only for the purpose of correcting clerical error or error on the face of the evidence on which such determination or decision was based.

As used in § 404.957(b), "good cause" for reopening a decision exists when:

(a) new and material evidence is furnished after notice to the party to the initial determination;

(b) A clerical error has been made in the computation or recomputation of benefits;

(c) There is an error as to such determination or decision on the face of the evidence on which such determination or decision is based.

See 20 CFR § 404.958.

The hearing officer's decision with respect to the 1971 application for benefits was that the additional evidence proffered was not sufficiently new and material within the meaning of § 404.957(g) and § 404.958(a) to warrant the reopening of the decision which denied plaintiff's 1968 application. It is on that basis that the Secretary contends that the decision not to reopen the 1968 application was proper and stands as the final decision in this case.

Even if the doubtful assumption that the additional evidence contained in the 1971 application is not new and material is made, a further question is presented in regard to whether the 1968 claim should have been reopened, pursuant to § 404.957(c)(8),[2] because of "an error on the face of the evidence" upon which the decision denying plaintiff's 1968 application was based.

The Eighth Circuit in *Lauritzen v. Weinberger* (8th Cir. 1975) 514 F.2d 561, noted that the Social Security Claims Manual defines the phrase "an error on the face of the evidence" as follows:

An error on the face of the evidence exists where, on the basis of all the evidence in the file on which the determination or decision was based and any evidence of record anywhere in the Administration at the time such determination or

---

1. Section 404.957 provides that such decisions "which [are not] otherwise final under § 404.908, § 404.916, § 404.940, or § 404.951" may be reopened under the provisions of this section. The regulations referred to provide that a decision of the Social Security Administration with

regard to a claim for benefits is final unless proper review proceedings are instituted with respect to a particular decision.

2. The same test is provided by § 404.957(b) and § 404.958(c).

decision was made, it is clear that the determination or decision was incorrect.

\* \* \* \* \* \*

A determination or decision which was reasonable on the basis of the evidence in the file and the statute, regulations, instructions, precedents, etc., existing at the time the determination or decision was made, will not be reopened merely because there is a shift in the weight of the evidence or different inference is now drawn from the evidence, a different rule of law would not be applied, or the statute or regulations have been amended unless such amendment specifically provides otherwise. \* \* \* In such cases, there is no error on the face of the evidence on which the determination or decision was based (i. e., the "record").

[*Lauritzen v. Weinberger, supra,* at 563]

See also Social Security Claims Manual, § 7015 (May, 1970). *Lauritzen v. Weinberger,* held that a claim must be reopened under § 404.957(c)(8) if an injustice has been done to the claimant or if there is manifest error on the record. This Court must therefore examine the record before the Secretary to determine if such injustice or error was present in the decision to deny plaintiff's 1968 claim. Since plaintiff last met the earnings requirements of the Social Security Act on June 30, 1967, we must determine whether he was disabled within the meaning of the Social Security Act on or before that date as claimed.

### III.

■ An applicant for disability benefits under the Social Security Act must establish a "disability" under the standards defined in § 223(a)(1) of the Act, 42 U.S.C. § 423(a)(1) (1970). In *Garrett v. Richardson,* 471 F.2d 598 (8th Cir. 1972), the Eighth Circuit summarized the standards as follows:

' \* \* \* (a) the claimant has the burden of establishing his claim; (b) the Act is remedial and is to be construed liberally; (c) the Secretary's findings and the reasonable inferences drawn from them are conclusive if they are supported by substantial evidence; (d) substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (e) it must be based on the record as a whole; (f) the determination of the presence of substantial evidence is to be made on a case-to-case basis; (g) where the evidence is conflicting it is for the Appeals Council on behalf of the Secretary to resolve those conflicts; (h) the statutory definition of disability imposes a three-fold requirement: (1) that there be a medically determinable physical or mental impairment which can be expected to [result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months], (2) that there be an inability to engage in any substantial gainful activity; and (3) that the inability be by reason of the impairment; (i) such substantial gainful activity is that which is both substantial and gainful and within the claimant's capability, realistically judged by his education, training, and experience; (j) the emphasis is on the particular claimant's capabilities, and on what is reasonably possible, not on what is conceivable; and (k) it is not the duty or the burden of the Secretary to find a specific employer and job for the claimant but, instead, some effort and some ingenuity within the range of the claimant's capacity remains for him to exercise.' *Brasher v. Celebrezze,* (8th Cir. 1965) 340 F.2d 413 at 414. (471 F.2d at 599–600).

■ Those standards have been repeatedly applied by the Eighth Circuit. See *Johnson v. Richardson,* 486 F.2d 1023 (8th Cir. 1973); *Yawitz v. Weinberger,* 498 F.2d 956 (8th Cir. 1974). The three elements of "disability" stated in *Garrett* form the basis for our determination of this case.

Plaintiff must first establish that he has a "medically determinable physical or mental impairment which can be expected to [result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months]". The medical

evidence presented in the entire record of this clearly establishes the existence of such impairments.

Plaintiff's third application, filed May 17, 1968, contained the diagnosis of Dr. Calovich, a physician employed by the government. He diagnosed Mr. Chenoweth's ailments in June of 1966 as follows: "generalized arteriosclerosis, hypertensive cardiovascular disease, a possible healed posterior injury of the myocardium, nasal septal deformity with chronic rhinitis, a marked degree of chronic bronchitis, and a moderate degree of pulmonary emphysema" [Tr. 169–178].

As early as July, 1964, plaintiff was having blood circulatory problems, as demonstrated by varying periods of numbness in his hands and fingers and cramps in his legs and arms. The cause of these malfunctions was attributed to angina pectoris and thoracic syndrome [Tr. 204, 205]. Angina pectoris attacks are brought about by exertion, causing painful chest sensations, varying in length, and which carry a likelihood of complications occasionally leading to sudden death. It is undisputed that Mr. Chenoweth had trouble negotiating steps, walking any distances, and that he frequently had to and continues to have to stop any physical exertion in order to regain his composure.

X-rays taken at General Hospital on January 10, 1963 indicate that plaintiff suffered from emphysema [Tr. 187]; that he had great difficulty in hearing, due to a perforated eardrum, a condition which eventually necessitated general operations, and that an operation on plaintiff's mastoid cavity left him partially deaf [Tr. 179, 199, 200, 206, 209].

The Secretary was presented additional medical evidence for appropriate consideration which was sufficient to merit a reopening of his 1968 claim. Of particular import are the following: the observation of a physician at Kansas City General Hospital dated Feb. 6, 1973, that Mr. Chenoweth's "extensive atheramatous disease demonstrated clinically and by arteriography and findings suggest *long standing arteriosclerotic disease* [Ex. 50, Tr. 251]. Exhibit 52

details the extensive and long-standing vascular impairments that plaintiff has suffered from [Tr. 262–264]. Exhibit 55 identified the existence of a moderately obstructive ventilating defect in March of 1966 [Tr. 332]. The suggestions of infarction of interior wall by an EKG on Dec. 30, 1966 [Tr. 328]; passing out spells in January, 1963 [Tr. 329]; nervousness and anxiety requiring sedation; and the presence of leg edema [Tr. 291].

In the face of such medical evidence it is clear that the plaintiff did in fact suffer from medically determinable physical impairments. It is also clear from the undisputed evidence that these impairments have lasted for more than twelve months and may well last indefinitely. Furthermore, it also seems quite apparent that to the extent that plaintiff is unable to engage in substantial gainful activity, such inability is a direct result of said impairments. In point of fact, there is no evidence of record pointing to any other reason.

## IV.

Under our view of the case, we must reach the question of whether there was substantial evidence to support the Secretary's finding that plaintiff's impairments did not render him incapable of engaging in substantial gainful activity. We find and conclude that no such evidence was presented in this case.

The record discloses that the plaintiff has consistently maintained the following: that he could not walk any distances, nor to any substantial extent exert himself without severe pain and discomfort; that when exertion caused pain, only complete rest relieved his suffering [Tr. 207]; that his emphysema caused sharp pains in his chest cavity [Tr. 305, 311]; that he suffered from nervousness requiring sedation [Tr. 296]; and that he had great difficulty, due to excessive coughing, and breathing problems, as early as 1966 [Tr. 311, 316].

The Missouri State Rehabilitation Institute conducted numerous medical tests over an extended period of time and it was their considered judgment that Mr. Chenoweth

was, as of July, 1966, "unemployable in any competitive industry." An additional report of that agency under date of June 19, 1967 stated that "Mr. Chenoweth's medical record would seem to suggest disability" [Tr. 284].

Plaintiff was forced to give up his then principal occupation of truck driving in the late 1950's because of heart spasms [Tr. 57–58]. In August, 1962, he had to leave his last full time position at General Hospital because of his inability to do required lifting and to work in dusty, fume-filled environments [Tr. 59, 60].

Mr. Chenoweth testified that after losing that last position, he began receiving public assistance for a time while still continuing in his attempts to locate employment. His quest landed him a myriad of part-time and temporary positions, including dishwashing, warehouse work, and the management of a small hotel. The evidence, however, is un-'disputed that all of those endeavors were short-lived due to frequent absences occasioned by his rather regular periods of ill health. Plaintiff attributed his failure to locate permanent employment to the following: his continued inability to lift objects of even minimal weight [Tr. 63]; his lack of balance caused by loss of hearing in his left ear [Tr. 67]; headaches [Tr. 69]; the constant choking and coughing that the air conditioning in most places seemed to set off; and to the frequent absences from work caused by his poor health.

We find and conclude that under all the undisputed facts and circumstances of this case the Secretary's determination that plaintiff is capable of engaging in substantial gainful activity is not supported by the evidence. We further find and conclude that the undisputed factual circumstances require a finding that plaintiff's predictably frequent health related absences, would not permit him to maintain even a job requiring only minimal exertion.

## V.

For the reasons above stated, we find and conclude that Mr. Chenoweth was in fact disabled within the meaning of the § 223(d)

Social Security Act, as amended, 42 U.S.C. § 423, during the period beginning on October, 1963, and extending through June 30, 1967, the date he last met the earnings requirement, and that the Secretary's decision in 1968 denying plaintiff's claim for disability, as well as the subsequent dismissals of plaintiff's 1971 application to reopen, were contrary to applicable law.

We further find and conclude that judicial review of the Secretary's action may not properly be barred by the application of administrative *res judicata* nor under the sixty day time limit for review action contained in § 405(g) of the Act. Judgment will therefore be entered for the plaintiff. *Lauritzen v. Weinberger*, 514 F.2d 561 (8th Cir. 1975).

It is therefore

ORDERED that the decision of the Secretary denying plaintiff disability insurance benefits on his 1968 claim and declining to reopen plaintiff's 1968 claim based on his 1971 application is hereby reversed. Accordingly, the Secretary is directed to reopen plaintiff's 1968 claim pursuant to 20 CFR § 404.957(c)(8) and to grant the claim for disability insurance benefits. The costs are taxed against the Secretary.