Robert M. JONES, Petitioner,

v.

RAILROAD RETIREMENT
BOARD, Respondent.

No. 79–1388.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 2, 1980.

Decided Jan. 17, 1980.

Robert M. Jones, pro se.

Dale G. Zimmerman, Gen. Counsel, Edward S. Hintzke, Asst. Gen. Counsel, Michael C. Litt, Gen. Atty., Chicago, Ill., for Railroad Retirement Bd., respondent.

Before HEANEY, ROSS and HENLEY, Circuit Judges.

HEANEY, Circuit Judge.

Robert M. Jones appeals pro se from a final decision of the Railroad Retirement Board. The Board held that Jones was not disabled from work "in any regular employment" within the meaning of 45 U.S.C.

§ 231a(a)(1)(v).[1] Over a period of eight years, Jones, a telegrapher for the Norfolk and Western Railway Company, experienced several minor "blackout" seizures. On December 9, 1975, Jones suffered a major seizure and was rushed to the hospital where he was treated for seventeen days. He was placed on medication and released. The Norfolk and Western Railway Company placed Jones, then forty years old, on disability and did not permit him to return to work. Although he has had no further seizures, he has been unsuccessful in his attempts to find other employment.

On January 19, 1977, Jones filed an application for an employee disability annuity under the Railroad Retirement Act of 1974, alleging that he had been unable to work since December 9, 1975. On his application, Jones described his disability as being caused by a seizure disorder—brain tumor suspect. The Board requested current medical examinations from the doctors who had treated him, as well as the company's doctors. Two company doctors, Dr. H. H. Hopwood and Dr. S. J. Byland, examined him in February, 1977, and found that he was unable to return to his last occupation, and that he was permanently and totally disabled from doing any other type of work. A treating doctor also reexamined Jones in early 1977 and found that he had a mild weakness of the left leg and stated that Jones was regarded as a brain tumor suspect with a right frontal lesion. He stated that Jones' response to medication had been excellent. He made no findings as to whether Jones was permanently and totally disabled.

On the basis of Jones' medical records and reports, the director of retirement claims for the Board denied his claim for disability benefits. Jones appealed that decision, noting that the company doctors had reported that he was permanently and totally disabled and that he had tried but had not been able to find any other employment. The Board then asked the University of Missouri-Columbia Medical Center to examine Jones. Dr. J. Donald Easton of that Center did so in July of 1978. He concluded:

> [M]y overall inclination is to think [Mr. Jones] simply suffered an episode of status epilepticus in which some right sided cerebral ischemia occurred that subsequently resolved. In any event, there is nothing to suggest that he has a progressive neurological disease and in fact his examination and electroencephalogram are normal at this time. His seizure disorder is controlled at this point and if he continues to take his medication [Dilantin, 100 mgs, three times daily] indefinitely there is every reason to believe that he should remain seizure-free in the future. Under these circumstances he should be able to drive an automobile and work at a full-time job.

Dr. Easton did not express an opinion as to whether Jones had been permanently disabled as of February, 1977.

On the basis of the Easton report, and with no further contact with Jones' treating physician or the company doctors, the chief

---

1.  The statute provides as follows:

    § 231a. Annuity eligibility requirements

    (a)(1) The following-described individuals, if they shall have completed ten years of service and shall have filed application for annuities, shall * * * be entitled to annuities in the amounts provided under section 231b of this title—

    \* \* \* \* \* \*

    (v) individuals whose permanent physical or mental condition is such that they are unable to engage in any regular employment. The Board regulations implementing the statute provide:

    An individual shall be deemed to be permanently disabled for work in any regular employment if he has a permanent physical or mental condition, as that term is defined in § 208.10, and he is because of such condition unable to perform regularly, in the usual and customary manner, the substantial and material duties of any regular and gainful employment which is substantial and not trifling, with any employer, whether or not subject to the act.

    20 CFR § 208.17(a) (1978).

    The § 208.10 referred to in the above quotation provides, insofar as is pertinent here, as follows:

    [T]he term "permanent physical or mental condition" means a physical or mental impairment that can be expected to result in death or has lasted, or can be expected to last for a continuous period of not less than 12 months.

    20 CFR § 208.10(a) (1978).

medical examiner of the Board recommended to the Board that Jones' claim be denied. An Appeals Referee denied Jones' claim on October 3, 1978. He did so without holding a hearing or attempting to resolve the conflict in the evidence. The Board adopted that decision and Jones appealed to this Court.

It is clear from the record that Jones' treating physician, the company doctors, and the Missouri-Columbia Medical Center agree that Jones had a serious epileptic seizure in 1975. Jones' condition and abilities since then are in dispute. If one accepts current literature dealing with the employability of an individual suffering from a neurological disorder whose seizures have been controlled for four years,[2] one would conclude that Jones is not permanently and totally disabled and that he should indeed be able to return to work at the railroad in the position of a telegrapher.[3]

The record in this case, however, contains only a series of contradictory, incomplete and confusing reports. The treating physicians have expressed no opinion on Jones' ability to return to work at any time between 1975 and the date of the Board's final decision, and they have expressed no opinion on his current ability to return to work. Doctors Hopwood and Byland, who examined Jones in February of 1977, reported that Jones was totally and permanently disabled—unable to work for the Norfolk and Western or for any other em-

ployer. Dr. Easton, who examined Jones in July of 1978, reported that Jones was not totally and permanently disabled and that he should be able to drive an automobile and work at a full-time job. He did not give an opinion as to whether Jones was able to return to work at the Norfolk and Western, nor did he give an opinion as to the type of full-time work that Jones might be able to do. He also did not express any view as to what Jones' condition might have been during the December, 1975, through July, 1978, period. Moreover, there is no testimony in the record by a vocational expert indicating that an individual with Jones' experience, background and medical disability is, in fact, able to obtain other employment now or that such an individual would have been able to obtain such employment during the period December, 1975, to July, 1978.

This fragmented and inconsistent record is the source of many problems. First, the Appeals Referee failed to indicate whether he considered the report of company doctors Hopwood and Byland to be credible at the time it was prepared (February, 1977) or, indeed, whether he considered their report at all. The record contains no evidence of reports contradicting the opinion of Doctors Hopwood and Byland until July, 1978, when Dr. Easton's report was prepared. Consequently, unless there is a valid reason for ignoring the testimony of the company doctors, Jones should be entitled to disability pay at least until July of

---

**2.** Studies indicate that safety, attendance and performance records of workers with epilepsy are as good or better than their coworkers. *See* Benson, *Epilepsy and Employment: Placement Problems and Techniques,* American Rehabilitation (published by Rehabilitation Services Administration, Department of Health, Education and Welfare); Employment Action on Epilepsy, A Guide for Employers and Employees (published by Epilepsy Foundation of America). According to an American Medical Association guide, as long as episodic neurological disorders are controlled so that most of the activities of daily living can be performed, the maximum impairment of the person is fifteen percent. *See* AMA, Guide to the Evaluation of Permanent Impairment 65 (1977). Indeed, many states, recognizing that controlled epilepsy presents few dangers, allow persons with epilepsy to drive motor vehicles if they have

been seizure-free for one year or more. *See, e. g.,* Minn.Stat. § 171.04(9) and Department of Public Safety Regulations promulgated thereunder.

**3.** The Department of Labor's Dictionary of Occupational Titles defines "telegrapher" as follows:

TELEGRAPHER (Railroad Transportation) *Operates telegraph key, teletype machine,* or talks over telephone to transmit and receive train orders and messages; records time and date messages were received or transmitted. Operates teletype machine to transmit messages and train orders. Reads messages received and marks for distribution. Informs train dispatcher by telephone of departure of out-bound trains from yard or terminal. Replaces rolls of teletype paper in machine as required.

1978. Furthermore, on this record, we have no way of knowing whether the Appeals Referee decided to deny benefits even after July, 1978, because he credited Dr. Easton's report over the report of Doctors Hopwood and Byland or because he simply ignored the latter. Even if Dr. Easton's report is credited, that report does not indicate whether Jones is able to return to his former employment.[4]

The result of the apparent conflicts in evidence and the failure of the Appeals Referee to deal with them is that Jones is left in the unenviable position of having in his employment record a report from Norfolk and Western doctors stating that he cannot return to work for that company and that he is not physically able to hold down any other job, as well as a report from Dr. Easton stating that he is able to work but not specifying the kind of work he is able to do. If Jones is honest when he seeks other employment, he has no alternative but to inform a prospective employer that he is an epileptic and that they can obtain more information on his condition from the treating doctors, the company doctors and the Missouri-Columbia Medical Center. These conflicting and incomplete reports cannot help but make it impossible for Jones to obtain regular employment.

Jones is left in this predicament because the Appeals Referee failed to follow the teachings of this Court directing such tribunals to develop the facts fully and fairly, particularly when the claimant is not represented by counsel, and to make adequate findings upon which this Court can base its review. *See Thorne v. Califano,* 607 F.2d 218 (8th Cir. 1979); *Landess v. Weinberger,* 490 F.2d 1187 (8th Cir. 1974); *Garrett v. Richardson,* 471 F.2d 598 (8th Cir. 1972); *Sellars v. Secretary of H.E.W.,* 458 F.2d 984 (8th Cir. 1972).

Under the circumstances set forth above, we have no choice but to remand the matter to the Railroad Retirement Board with directions to reopen the case and make a full and fair determination as to whether the claimant is disabled or not. *Landess v. Weinberger, supra* at 1189. *See also Thorne v. Califano, supra; Lewis v. Califano,* 574 F.2d 452 (8th Cir. 1978); *Daniels v. Mathews,* 567 F.2d 845, 848–849 (8th Cir. 1977); *Garrett v. Richardson, supra.* At this reopening, it will be necessary to take additional testimony from the company doctors and Dr. Easton.[5] It may also be necessary to secure the testimony of a vocational expert.

The decision of the Railroad Retirement Board is reversed and the matter is remanded to the Board for action consistent with this opinion.

---

**4.** In order to properly allocate the burden of proof on the issue of Jones' ability to engage in *any* regular employment, the Appeals Referee must determine whether Jones is able to return to his former employment. If the Appeals Referee should determine that Jones' disability is such that he is unable to return to work at his former occupation, the burden of proving that Jones is able to perform other regular employment falls on the Railroad Retirement Board.

*See Goodson v. Railroad Retirement Bd.,* 194 U.S.App.D.C. 74, 76, 595 F.2d 881, 883 (D.C. Cir. 1979).

**5.** We note that Jones may be entitled to subpoena and cross-examine the doctors who have submitted reports used in the decisionmaking process. *See Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).