Beulah W. BYRD, Plaintiff,

v.

Elliot RICHARDSON, Secretary of
Health, Education and Welfare,
Defendant.

Civ. A. No. 72-220.

United States District Court,
D. South Carolina,
Columbia Division.

Aug. 18, 1973.

Kenneth L. Holland, Holland & Furman, Camden, S. C., for plaintiff.

John K. Grisso, U. S. Atty., and Wistar D. Stuckey, Asst. U. S. Atty., Columbia, S. C., for defendant.

## ORDER

HEMPHILL, District Judge.

This is a suit by the plaintiff against the Secretary of Health, Education, and Welfare under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Secretary denying the plaintiff's application for the establishment of a period of disability under § 216(i) of the Act, 42 U.S.C. § 416(i), and for disability insurance benefits, as provided by § 223 of the Act, 42 U.S.C. § 423.

Plaintiff initially applied for a period of disability and for disability insurance benefits on October 22, 1970, alleging she became unable to work on May 18, 1970, at age 56. The application was denied initially and on reconsideration by the Bureau of Disability Insurance of the Social Security Administration, after the South Carolina State Agency, upon evaluation of the evidence by a physician and a disability examiner, had found she was not under a disability. The hearing examiner, before whom plaintiff, her husband, and her attorney appeared, considered the case *de novo* and on December 13, 1971, found plaintiff was not under a disability. Plaintiff meets the earnings requirements of the Act until September 30, 1974. The hearing examiner's decision became the final decision of the Secretary of Health, Education, and Welfare when the Appeals Council approved the hearing examiner's decision on February 10, 1972.

The only issue before this court is whether or not the findings of the Secretary are supported by substantial evidence, and if they are the findings of the Secretary must be accepted. This court may not try the case *de novo* and substitute its findings for those of the Secretary. Flack v. Cohen, 413 F.2d 278 (4th Cir. 1969). This does not mean however that the findings of the administrative agency must be blindly accepted. On the contrary, the statutorily-granted right of review contemplates more than an uncritical rubber stamping of the administrative action. *Flack* mandates a critical and searching examination of the record, and the setting aside of the Secretary's decision when necessary to insure a result consistent with congressional intent and elemental fairness. *Flack,* supra, at 279–280. See also Thomas v. Celebrezze, 331 F.2d 541 at 543 (4th Cir. 1964). As was stated by Judge McAllister in a recent Sixth Circuit opinion, and quoted with approval in Garrett v. Richardson, 471 F.2d 598, 604 (8th Cir. 1972):

"It used to be easy enough for an appellate court to affirm an administrative agency on the ground that the findings were supported 'by substantial evidence,' if it could find just a trace of evidence to support them. But that is not the case any more. Congress grew critical of such affirmances which ignored conflicting evidence and, in turn, brought about harsh criticism of the courts for such

decisions on the ground that cases were affirmed merely because the appellate court could find evidence in the record which, viewed in isolation, substantiated a Board's findings." Floyd v. Finch, 441 F.2d 73, 76 (6th Cir. 1971).

■■ Substantial evidence has been defined by the Supreme Court as "more than a mere scintilla". It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842, 852 (1971). See also Kyle v. Cohen, 449 F.2d 489, 492 (4th Cir. 1971). As was stated in Dyer v. Richardson, 347 F.Supp. 478 (E.D.Tenn.1972), quoting Consolo v. Federal Maritime Com., 383 U.S. 607, 619–620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966), "It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." Id. at 481. It is now clearly settled that written medical reports by a licensed physician who has examined the claimant may constitute "substantial evidence" in social security cases, despite their hearsay character, Perales, supra, 402 U.S. at 402, 91 S.Ct. at 1428, 28 L.Ed.2d at 853.

■ In order to establish a claimant's entitlement to social security disability benefits, there must be a showing that (1) there is a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months, and (2) that the impairment in fact caused an inability to engage in any substantial gainful activity. Harris v. Richardson, 450 F.2d 1099 (4th Cir. 1971). Hicks v. Gardner, 393 F.2d 299 (4th Cir. 1968) makes it clear that more than the objective medical facts are to be considered in this regard. As stated in Hicks:

Before making a finding of a claimant's ability or inability to engage in any substantial gainful activity as contemplated by the law, there is a duty to consider the objective medical facts, which are the clinical findings of examining or treating physicians divorced from their expert judgment or opinions as to the significance of the clinical findings; (2) the medical opinions of these physicians; (3) the subjective evidence of pain and disability testified to by the claimant and corroborated by other evidence; and (4) the claimant's background, work history and present age. Id. 393 F.2d at 302 (citations omitted).

■ It was also made clear in Hicks that a claimant's maladies must be considered in combination and not fragmentized in evaluating their effects on the claimant. Id. See also Branham v. Gardner, 383 F.2d 614 (6th Cir. 1967).

■ The general rule is that in order to authorize denial of social security benefits on the ground that the impairment does not render the claimant unable to engage in any gainful employment, "there must be evidence to show the reasonable availability of jobs which the claimant can perform." Hayes v. Gardner, 376 F.2d 517 (4th Cir. 1967). The burden of proving disability under the Act rests on the plaintiff. Sliger v. Richardson, 315 F.Supp. 1093 (W.D.Va. 1970), aff'd 436 F.2d 1385 (4th Cir. 1971); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). This burden need not, however, be carried to a point beyond a reasonable doubt, Thomas v. Celebrezze, 331 F.2d 541, 545 (4th Cir. 1964); Ketron v. Finch, 340 F.Supp. 845, 849 (D. C.Va.1972). When a plaintiff shows that he is disabled from engaging in his former occupation, the burden shifts to the Secretary to come forward with a showing of other employment available to a person of plaintiff's age, education, work experience, skills, and physical limitations. Meneses v. Secretary of Health, Education, and Welfare, 143 U. S.App.D.C. 81, 442 F.2d 803 (1971). Hicks v. Gardner, supra, 393 F.2d at 301. Boyd v. Gardner, 377 F.2d 718 (4th Cir. 1967).

Plaintiff is a 60-year old female (57 at the time she filed her initial application) who has spent an entire working life as a spinner in textile mills. She is a high school graduate, married, mother of one married daughter. In her application she alleges that she became disabled May 18, 1970 due to arthritis of the spine and hands. In denying plaintiff's application for the establishment of a period of disability and disability benefits, the hearing examiner found, *inter alia*, that while the plaintiff's arthritic condition "no doubt caused her some discomfort," it did not cause a functional limitation which would prevent her from returning to her usual work. Stated differently, the hearing examiner concluded that plaintiff had failed to meet the second part of the two-part test, that is, that the impairment in fact caused an inability to engage in any substantial gainful activity.

From a review of the record it is apparent that the hearing examiner rested his decision primarily upon the medical report submitted by Dr. Thomas E. Edwards, M.D.[1], to whom plaintiff was apparently referred by the South Carolina Vocational Rehabilitation Department. Dr. Edwards concluded in his report (dated February 22, 1971) that: "This lady has minimal osteoarthritis as evidenced by x-ray changes which can not be confirmed as more than minimal clinically as compared to her age."

In direct contradiction to Dr. Edwards' findings and conclusions are those of plaintiff's family physician of many years, Dr. Julian A. Hard.[2] In his report to the South Carolina Vocational Rehabilitation Department dated June 10, 1971, Dr. Hard stated:

Because of her multiple and continually increase [sic] symptoms I do not feel that this lady is capable of any type of gainful employment. Her symptoms and disability are not new or of recent origin but extends [sic] over a 6–7 yr. period during which time she continued to work until she was simple [sic] unable to perform her duties any longer.

He went on to state that his opinion was based on seeing plaintiff an average of twice a month for the preceding year.

In dismissing this unequivocal report by Dr. Hard, the hearing examiner observed:

In his report dated June 10, 1971, Dr. Hard indicated that he had seen Mrs. Byrd some twenty times since her hospital discharge in May of 1970 and that she had increasing difficulty with her back, especially the lumbar area with pain into the left hip and progressive stiffness of her neck. Dr. Hard gave no reports of any tests; however, without giving much detailed information, he stated that the claimant has many physical problems and is in no condition to work.

He apparently did not consider the report of hospitalization for the period May 18–22, 1970 at Kershaw County Hospital to be a report of any tests, but in fact it contained the following:

Films were obtained of dorsal and cervical spine which showed disk degeneration between C–3 and C–4 and narrowing of 6th cervical interspace which was felt to be due to degeneration of disk. X-ray of dorsal spine showed spur formation along the margin of lower vertebral bodies being more marked on the opposing surfaces of T–8 and T–9, and there was exaggeration of the kyphotic curvature of the back. X-rays of both hands showed fusiform type swelling about the proximal interphalangeal joints of the fingers consistent with arthritic changes. This also involved some of the metacarpal bones of the left hand and also the greater multangular bone of the left hand.

---

1. Dr. Thomas E. Edwards, M.D., is a specialist in Orthopedic Surgery admitted to practice in 1946.

2. Dr. Julian A. Hard is a general practitioner, admitted to practice in 1959.

This report was an enclosure to Dr. Hard's report of June 10, 1971, and while the hospitalization was for "Right Lower Back Pain with Probable Renal Colic", the "Secondary Diagnosis" on discharge was "Generalized Degenerative Changes in the Cervical and Dorsal Spines and the Hands." It is noteworthy that on the "Personal History" portion of the above hospital report it is noted:

> Patient has been admitted to this hospital in 1960 for influenzal syndrome and again in 1965 for cardiospasm, functional bowel syndrome and degeneration of cartilage of C–3, C–4, L–5, S–1. She was re-admitted again for disk degeneration of cervical spine in 1965.

It is also noteworthy that these earlier hospital reports (1960 and 1965) are not a part of the record before this court, nor is there evidence that they were before the hearing examiner, although they would clearly be relevant. These reports are not only clearly relevant, but are in direct conflict with Dr. Edward's report of February 22, 1971 which was the report on which the hearing examiner relied. In that report Dr. Edwards stated with regard to plaintiff's hands:

> Upon examination of the hands, there was no Heberden's nodes present. There are indeed no deformities about the fingers. There are no contractures of any of the finger joints. There is no swelling. There is a full range of motion in both wrists and both elbows.

> *     *     *     *     *     *

> X-Ray of the left hand reveals no evidence of bony proliferation around the joints, no deformities, and no narrowing of the joints. The wrist can be seen in this picture and there are no arthritic changes present in the wrist.

As to plaintiff's back problems, Dr. Edwards stated:

X-Rays of the cervical spine, AP and lateral, reveal a moderate amount of lipping around the edges of the vertebra. There is no spurring seen and there is no narrowing of any of the interspaces.

*     *     *     *     *     *

Upon examination of the lower extremities when asked to bend while standing forward she states that she can not do so, but actually she can accomplish forward bending until the fingertips come within 18 inches of the floor. The lumbar spine does move. She has fairly normal right and left lateral bending. She has hyperextension.

The hearing examiner also appears to lean, for further support of his position, to a brief medical report by Dr. Thomason[3] which was requested by the plaintiff's attorney. This report related to a gallbladder operation performed on the plaintiff on July 17, 1971, and states that a cholecystectomy (removal of the gallbladder) was performed due to severe cholecptitis; that the postoperative course was uncomplicated; and that at the time of the report she was on no medication and was improving. With regard to this report the hearing examiner stated:

> It is also noted that the gallbladder operation is subsequent to the claimant's alleged onset of disability date but there is no mention in Dr. Thomason's report of any severe arthritic condition or any muscoskeletal problem.

Two points should be noted with respect to this statement: (1) It relates to a very brief report which is really no more than a confirmation that an operation was performed to remove plaintiff's gallbladder, there being no hospital records attached or otherwise made a part of the record; and (2) the failure of a doctor who performed a gallbladder operation to comment on an arthritic condition, two wholly unrelated infirmities does not appear to carry as much

---

3. Dr. John M. Thomason, M.D., is a fulltime General Practitioner admitted to practice in 1965.

significance as the hearing examiner attaches to it, especially when it appears that this was the only time Dr. Thomason treated the plaintiff who was visiting in the town where Dr. Thomason practices.

In addition to the medical reports already considered is a report from the Elliot White Springs Memorial Hospital in Lancaster, South Carolina, where the plaintiff was treated January 3–9, 1970. Although initially admitted for suspected cardiovascular difficulties, examination revealed no cardiovascular problems but did reveal a small sliding esophageal hiatus hernia, and a dense concentration of the opaque medium by the gallbladder on x-ray examination. Plaintiff has not alleged that her disability stems from her other ailments, but only her arthritic condition. The hearing examiner's conclusions that these ailments are not disabling does appear to be supported by the record, and is indicative of the fact that the hearing examiner did in fact consider these ailments in combination with the arthritic complaints.

▆▆▆▆▆ Of considerable concern to this court is the fact that in the face of the direct conflict in the medical reports of Doctors Hard and Edwards, the hearing examiner made no effort to have other relevant medical records, mentioned in other reports which are in the record, made a part of this record. Specifically, the hospital records for the two (2) periods of hospitalization in 1965 for cartilage degeneration and disk degeneration of the cervical spine (referred to in the Kershaw County Memorial Hospital report of May 18–22, (1970), and the medical reports of Doctors W. W. Ledyard and B. W. Marshal in November and December 1965 respectively, (referred to in Dr. Hard's report of June 10, 1971) should have been a part of the record considered by the hearing examiner. It is clear that the initial burden is upon the plaintiff to prove that he is disabled under the Act, Sliger v. Richardson, supra, and that a part of this burden is to produce for consideration adequate medical evidence to support the claimed disability. A countervailing consideration however is the duty of impartiality and basic fairness which is imposed on the hearing examiner. The hearing examiner is not the Secretary's advocate, but is given authority as an impartial trier of fact. This was made clear in Sellars v. Secretary of H. E. W., 458 F.2d 984 (8th Cir. 1972), when the court, after quoting from the Secretary's own regulations published as 20 C.F.R. § 404.927, and citing Richardson v. Perales, 402 U.S. 389, 410, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), stated: "The essence of the examiner's duty under the Act, as required by this regulation, [20 C.F.R. § 404.927] is that he *fully* and *fairly* develop the facts." *Sellars,* 458 F.2d at 986 [emphasis the court]. This holding was quoted with approval in Garrett v. Richardson, 471 F.2d 598, 603 (8th Cir. 1972). Here, the hearing examiner gave the plaintiff an opportunity to submit additional evidence subsequent to the hearing, and counsel for plaintiff did in fact submit the medical report sent to him by Dr. Thomason, and it was considered by the hearing examiner. This court is of the opinion however that, as the hearing examiner had knowledge from reports before him of other medical reports bearing directly on the alleged impairment, he should have specifically requested the subject records.

For the foregoing reason this case should be and is remanded to the Secretary for the purpose of obtaining through plaintiff, and consideration of, the records specified above, as well as such other evidence, including further medical examination of plaintiff, as the Secretary deems appropriate.

And it is so ordered.