Catherine **HUTH**

v.

Caspar **WEINBERGER, Individually and as Secretary of Health, Education and Welfare.**

**Civ. A. No. 75-126.**

United States District Court, E. D. Pennsylvania.

Nov. 11, 1975.

George J. Joseph, Allentown, Pa., for plaintiff.

Robert E. J. Curran, U. S. Atty., William J. McGettigan, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

MEMORANDUM

GORBEY, District Judge.

This is an action under § 205(g) of the Social Security Act, as amended, 42

U.S.C. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare, denying plaintiff's claim for a period of disability and for disability insurance benefits.

The issue is whether the Secretary's final decision that plaintiff is not entitled to disability insurance benefits for a period of disability is supported by substantial evidence. Each of the parties has filed a motion for summary judgment.

After due notice, a hearing was held in Allentown, Pennsylvania, on January 31, 1974, and the claimant, not represented by counsel, appeared personally and testified, as did the Vocational Expert, Dr. Albert L. Billig. In her application for benefits, plaintiff stated that she was born on February 24, 1926, had completed the eighth grade, and was last employed as a cleaning woman. She has also worked as a waitress and factory employee. She claims that she became unable to work in December, 1971, because of "arthritis of the spine, back trouble, hernia of the esophagus, and spurs on vertebrae". It appears that claimant's earning record shows that the special earnings requirements of the Act were met from a time prior to December, 1971, when claimant allegedly became unable to work, and that these requirements were last met on December 31, 1971. Accordingly, for the claimant to be entitled to a period of disability or disability insurance benefits, the evidence must show that the claimant was under a disability from a time on or prior to December 31, 1971, and that such disability continued at least twelve months prior to claimant's filing an application for benefits.

Section 216(i) of the Social Security Act provides for the establishment of a period of disability, and Section 223 of the Act provides for the payment of disability insurance benefits when the requirements specified therein are met. Section 223(d)(1) of the Act defines "disability" (except for certain cases of blindness) as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Section 223(d)(2)(A) further provides, with exceptions not here applicable, that an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. "Work which exists in the national economy" is said to mean "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Section 223(d)(3) provides that a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

■ The Administrative Law Judge has found as a fact:

"3. The preponderance of the medical evidence of record establishes that on and prior to December 31, 1971, claimant suffered from a hiatal hernia condition causing occasional chest pain and nausea, from a history of moderate arthritis of the spine made worse by an injury in January, 1971, prohibiting claimant from performing jobs requiring significant stooping, bending, or lifting, or standing or sitting for continuous or prolonged periods without opportunity for change of position to relieve discomfort."

Also:

"4. Although claimant was prevented by her impairments from performing

her usual work on and prior to December 31, 1971, she retained the residual functional capacity and vocational potential to perform light and sedentary jobs found in the economy in substantial numbers, examples of which are assembly of light electronic components and telephone answering." (Tr. 86, 87)

Since plaintiff satisfied her initial burden of proving inability to return to her former work, the burden then shifted to the Secretary to show some other specific area of employment available to her. *Garrett v. Richardson*, 471 F.2d 598 (8th Cir. 1972); *Byrd v. Richardson*, 362 F.Supp. 957 (D.C.S.C.1973); *Bugdnewicz v. Celebrezze*, 249 F.Supp. 139 (D.C.Pa.1966).

■ Dr. Billig, the Vocational Witness, was present throughout the entire hearing and heard all of Mrs. Huth's testimony. He had already familiarized himself with the proposed exhibits prior to the hearing. (Tr. 115, 116) He was asked the following question by the Administrative Law Judge:

". . . Dr. Billig assuming that I find that the claimant suffers from hiatal hernia, esophageal hernia condition which causes her occasional chest pain and nausea feeling from time to time, especially if she overeats, that she suffers from ah . . . a history of arthritis, ah . . . moderate . . . arthritis of her, of the spine and particularly of the cervical area, which was ah . . . made worse following a (sic) injury in January 1971 and because ah . . because of these conditions, I might just interject at this point, she has suffered from a compression fracture of L1 of the back but this was in March 1973 and hysterectomy was performed in August 1973, however, these were considerably beyond the point of eligibility so I'm not including them. That because of these conditions ah . . . she is unable to either stand or sit for a continuous or very prolonged periods without dis-

comfort ah . . . requiring her to change her position. Ah . . . in other other words she could only stand for approximately an hour without being required to sit down to relieve her discomfort. She could only sit for about the same period before needing to move about to relieve her discomfort. And that she would be unable to do significant stooping or bending or lifting. And that she therefore, would have the residual functional capacity to perform only ah . . . light and sedentary exertion, do you have an opinion as to whether she could do any of the work that she has done in the past?" (Tr. 117, 118)

Dr. Billig responded:

"The one condition that I think she could function in is the light housework, the dusting, in other words, as long as it wouldn't entail moving heavy furniture because her work records show that she has engaged in such activities from time to time." (Tr.118)

The Administrative Law Judge continued:

". . . under the same assumption are there any other jobs found in significant numbers in the economy which the claimant might be able to perform?"

"Dr. Billig: There's one or two positions I though (sic) would be appropriate, that is like a General Electric assembly, where they sit down and assemble toasters and so forth. This would be one of the possibilities. And the Allen Organ, that's out at McCungie, there they have a lot of sit down jobs which they assemble electronic materials. And one other thing which would be appropriate, because she has a good voice and so forth, ah . . . like a telephone answering service. Her position, this would be appropriate in terms of her background. She likes to read." (Tr. 118, 119)

In response to the question:

"Are these jobs you're describing ah . . . suitable for individuals with a limited education since (sic) as Mrs. Huth?"

"Dr. Billig: Yes, I think this would be appropriate for her type of education because the answering service would merely be recording and so forth. It could be quite phenomenal kind of material and the ah . . . assembly and so forth, this would be . . . most of the workers are about her own economical level."
(Tr. 119)

To the question:

"And those are the only jobs that you are able to . . ."

Dr. Billig responded:

"Well, those would be primarily desired to meet her specification. There's one other that she probably could do but this I'm not sure, and that is ah . . . of the running of a sewing machine in a factory which is primarily sitting. But, this may . . . maybe the noise would be contraindicative, I'm not sure."
(Tr. 119)

In response to the question,

"What would you say as to the incidents numbers of these jobs ah . . in the general region."

Dr. Billig responded:

"The economy, well, as far as the power sewing machine, that is ah . . . many, many thousands, I mean this is a (sic) area which has quite a large amount of this and the assembly work in General Electric and so forth, these jobs exist in significant numbers and the . . ."

To the question:

"When you say significant or substantial numbers, thousands would you say?"

"Dr. Billig: Hundreds and thousands, yes . . . And the ah . . . one is telephone answering service, this of course, would be more restricted but there probably are hundreds of . . . of those."
(Tr. 120)

The region in which these jobs were supposed to be available was "this is here in the urban area, these particular areas, within an area, say 25 miles . . ." of Allentown. When asked whether the jobs mentioned would allow claimant the flexibility she would need to change her position, the response was "I think they would because these are usually done with individuals and most employers do give this amount of latitude." (Emphasis added) To the question: "Have you in your experience, Dr. Billig, personally observed jobs of these types being performed?" Dr. Billig responded: "Some of these I have, yes." (Tr. 120) (Emphasis added)

The aforementioned illuminating dialogue is the basis on which this court must determine whether there is substantial evidence to support the denial of benefits to one who has been found by the Administrative Law Judge to have been prevented by her impairments from performing her usual work on and prior to December 31, 1971, and with respect to which "the preponderance of the medical evidence of record establishes that on and prior to December 31, 1971, claimant suffered from a hiatal hernia condition causing occasional chest pain and nausea, from a history of moderate arthritis of the spine made worse by the injury in January, 1971, prohibiting claimant from performing jobs requiring significant stooping, bending, or lifting, or standing or sitting for a continuous or prolonged periods without opportunity for change of position to relieve discomfort". (Findings of Fact 3, Tr. 86, 87)

When asked whether the jobs mentioned by the expert would allow the flexibility plaintiff would need to change her position, he testified:

"I think they would because they are usually done with individuals and most

employers do give this amount of latitude."

(Emphasis added)

This doubtful response prompted the Administrative Law Judge to ask:

· "Have you in your experience, Dr. Billig, personally observed jobs of these types being performed?"

The answer to this question was:

"*Some* of these, I have, yes." (Tr. 120) (Emphasis added)

The testimony is further weakened when considered in the light of the expert's opinion that plaintiff's ability to run a sewing machine in a factory, might be doubtful, not due to her inability to sit for more than an hour, or inability due to her arthritis and pain in the arms, but "maybe the noise would be contraindicative, I'm not sure." (Tr. 119)

With respect to the expert's testimony that plaintiff could do light housework, dusting "as long as it wouldn't entail moving heavy furniture", even the Administrative Law Judge was not convinced as shown by his evaluation of the evidence in which he wrote:

"Although the vocational witness felt that claimant might be able to do such work if no heavy lifting were involved, it nevertheless seems doubtful that she could have had performed such a job on a regular basis in view of the nature of her impairments." (Tr. 86)

Although there is substantial evidence in the record to support the Administrative Law Judge's finding that plaintiff was prevented by her impairments from performing her usual work on and prior to December 31, 1971, there is no satisfactory or substantial evidence in the record to support a finding that plaintiff could "engage in any other kind of substantial gainful work which exists in the national economy" on or prior to December 31, 1971".

It follows, therefore, that the Secretary has not satisfied the burden of proof placed upon him by the aforementioned cases, therefore defendant's motion for summary judgment must be denied and plaintiff's motion for summary judgment is granted.