**Clarence E. BULLARD, Plaintiff,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.**

**No. 77–4014–CV–C.**

United States District Court, W. D. Missouri, W. D.

Jan. 30, 1978.

Timothy C. Harlan, Boonville, Mo., for plaintiff.

Stuart J. Newman, Asst. U. S. Atty., Kansas City, Mo., for defendant.

## ORDER

ELMO B. HUNTER, District Judge.

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for review of a decision by the defendant Secretary of Health, Education, and Welfare denying plaintiff's application for disability and supplemental security income benefits.

Plaintiff filed his claim for Disability Insurance Benefits on June 5, 1975 (Tr. 57–60). The Bureau of Disability Insurance, Division of Initial Claims, denied plaintiff's claim on July 16, 1975 and notified plaintiff of his right to request a reconsideration of this determination within six months of that date (Tr. 62). Plaintiff filed his request for reconsideration on October 6, 1975 (Tr. 64), but, on November 4, 1975, the Bureau of Disability Insurance, Division of Reconsideration, affirmed the denial of plaintiff's claim and notified plaintiff of his right to have a hearing before an Administrative Law Judge of the Bureau of Hearings and Appeals (Tr. 67).

Plaintiff and his wife filed their application for Supplemental Security Income on June 5, 1975 (Tr. 68–71). On July 16, 1975, this application was denied (Tr. 72–73). On October 6, 1975, plaintiff filed his Request for Reconsideration of this denial and, on November 4, 1975, this denial was affirmed and plaintiff was notified of his right to request a hearing before an Administrative Law Judge of the Bureau of Hearings and Appeals (Tr. 75–76).

On June 15, 1976, a hearing was held before an Administrative Law Judge of the Bureau of Hearings and Appeals for purposes of considering both the claim for Disability Insurance Benefits and for Supplemental Security Income. On July 14, 1976, the Administrative Law Judge made the following decision at Tr. 13:

It is the decision of the administrative law judge that based upon the applica-

tions filed on June 5, 1975, the claimant is not entitled to either a period of disability or disability insurance benefits under Section 216(i) and 223(a) of the Social Security Act, as amended.

It is the further decision of the administrative law judge that the claimant is not disabled within the meaning of the supplemental security income insurance Law, Title XVI, of the Act.

On this same date, plaintiff was notified of his right to have the Administrative Law Judge's decision reviewed by the Appeals Council and of the fact that plaintiff must request such a review, if he desired one, within sixty days of July 14, 1976 (Tr. 9). On November 24, 1976, the Appeals Council affirmed the decision of the Administrative Law Judge and notified plaintiff of his right to seek judicial review within sixty days (Tr. 3). Plaintiff thereupon commenced this action on January 21, 1977.

## I

### STANDARDS OF REVIEW

 In reviewing the determination of the Secretary of Health, Education, and Welfare pertaining to a Social Security claim, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ." 42 U.S.C. § 405(g). In applying this standard of review to a particular case, a good deal of deference must necessarily be given the findings of the Secretary. As stated in *Taylor v. Richardson*, 354 F.Supp. 13, 17 (M.D.La.1973):

The District Court's role in the review of the Secretary's decision is limited. The Secretary is to resolve conflicts in evidence and inferences therefrom which may exist. . . . A review of the Secretary's decision by a Federal District Court is not a trial de novo. The function of this Court is to decide whether or not there is substantial evidence in the record as a whole to support the Secretary's findings. . . . If the final decision is supported by substantial evidence it must be affirmed even if there is

also substantial evidence in the record which might have supported a finding in favor of the claimant.

Despite the deferential treatment accorded the Secretary's findings of fact, the reviewing Court must do much more than merely "rubber stamp" the Secretary's decision. In *Byrd v. Richardson,* 362 F.Supp. 957, 959 (D.S.C.1973), the Court stated:

This Court may not try the case *de novo* and substitute its findings for those of the Secretary. *Flack v. Cohen,* 413 F.2d 278 (4th Cir. 1969). This does not mean however that the findings of the administrative agency must be blindly accepted. On the contrary, the statutorily-granted right of review contemplates more than an uncritical rubber stamping of the administrative action. *Flack* mandates a critical and searching examination of the record, and the setting aside of the Secretary's decision when necessary to insure a result consistent with congressional intent and elemental fairness.

■ Clearly, in applying the substantial evidence standard of review, the reviewing Court must consider the whole record, including all evidence which fairly detracts from the findings made by the Secretary. As stated in *Floyd v. Finch,* 441 F.2d 73, 76 (6th Cir. 1971), *quoted with approval* in *Garrett v. Richardson,* 471 F.2d 598, 604 (8th Cir. 1972):

It used to be easy enough for an appellate court to affirm an administrative agency on the ground that the findings were supported "by substantial evidence," if it could find just a trace of evidence to support them. But that is not the case anymore. Congress grew critical of such affirmances which ignored conflicting evidence and, in turn, brought about harsh criticism of the courts for such decisions on the ground that cases were affirmed merely because the appellate court could find evidence in the record which, viewed in isolation, substantiated a Board's findings.

■ The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 852 (1971). The Fourth Circuit, in *Laws v. Celebrezze,* 368 F.2d 640, 642 (1966) has defined the standard thus:

It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

If there is substantial evidence to support the Secretary's decision, then this Court's inquiry must terminate. "It is not within the province of this court to determine the weight of the evidence; nor is it our function to substitute our judgment for that of the Secretary if his decision is supported by substantial evidence." *Laws v. Celebrezze, supra,* at 642.

The substantial evidence rule is but one of many standards which guides this Court in reviewing a decision of the Secretary in a case such as this. The decisions have summarized these many standards thus:

(1) the claimant has the burden of establishing his claim;

(2) the Act is remedial and is to be construed liberally;

(3) the Secretary's findings and the reasonable inferences drawn from them are conclusive if they are supported by substantial evidence;

(4) substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;

(5) in applying the substantial evidence test, the reviewing court must view the record as a whole, considering both the evidence which supports the Secretary's findings and that which detracts from those findings; the reviewing court is not, however, to weigh the evidence;

(6) the determination of the presence of substantial evidence is to be made on a case-to-case basis;

(7) where the evidence is conflicting it is for the Appeals Council, on behalf of the Secretary, to resolve those conflicts;

(8) the statutory definition of disability imposes a three-fold requirement:

(a) that there be a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,

(b) that there be an inability to engage in any substantial gainful activity, and

(c) that the inability be by reason of the impairment;

(9) "substantial gainful activity" is that which is both substantial and gainful and within the claimant's capability, realistically judged by his education, training and experience;

(10) the emphasis is on the particular claimant's capabilities and on what is reasonably possible, not on what is conceivable; and

(11) it is not the duty or the burden of the Secretary to find a specific employer and job for the claimant but, instead, some effort and some ingenuity within the range of the claimant's capacity remains for him to exercise. *See Russell v. Secretary of Health, Education and Welfare*, 540 F.2d 353, 356–57 (8th Cir. 1976).

With these general standards in mind, a review of the record in this case is in order.

## II

### EVIDENCE PRESENTED IN THE ADMINISTRATIVE PROCEEDINGS

■ The basic facts are not in dispute. Plaintiff was born on March 22, 1926 (Tr. 31) and has been married to his present wife for just over 30 years (Tr. 32). He has a tenth grade education (Tr. 33). He was in the military service from 1944 to 1946, but received no particular training during this period (Tr. 34). The only work he has ever pursued is house painting, which he has done for approximately 30 years (Tr. 34).

On May 13, 1975, plaintiff fell off his stepladder while painting, falling some ten or twelve feet onto concrete (Tr. 39). He was initially taken to Cooper County Hospital but was then transferred to the Veterans Hospital in Columbia, Missouri, where he remained for about nine days (Tr. 39–40). According to plaintiff, when he fell off the stepladder, "the bottom of my foot hit the concrete. And, then, the rubber soles that I had on the shoes just split the, and the ankle went on," and "the whole ankle was busted up bad. In fact, it was almost torn off when I hit this concrete" (Tr. 42). The medical reports describe plaintiff's injury as an "open paritalar dislocation" (Tr. 98). In a report by Dr. Logel of the Veterans Hospital, it is stated that plaintiff's dislocation

was reduced in the operating room and immobilized, placed in a short lef plaster cast, afebrile and discharged ambulatory, non-weight bearing on crutches. Disposition: Patient is to return to the Orthopedic Clinic in two weeks for removal of cast, removal of sutures, and recast in a more neutral position.

(Tr. 98). Plaintiff's disability was described as 100% (Tr. 98).

Over the next few months, plaintiff had several different casts applied (Tr. 99) and his progress was described as satisfactory (Tr. 99). In a medical report dated July 31, 1975, it was recommended that plaintiff begin 25% weight bearing and advance to full weight bearing over the next six weeks (Tr. 103). However, in a medical report dated September 17, 1975, plaintiff was again described as 100% disabled (Tr. 100).

Nonetheless, by October 23, 1975, plaintiff's condition was improving. A medical report bearing this date stated: "Pain, activity all better than previously; thinks he may be able to work part time soon" (Tr. 102). But, on January 22, 1976, plaintiff's physician noted that plaintiff "will be disabled for at least another 4 months" (Tr. 115).

At the hearing held before the administrative law judge on June 15, 1976, plaintiff testified that he is unable to return to his previous employment as a house painter because he can only stand on both feet for a limited period of time, because the job requires the use of both feet, because the job

can't be done sitting down, and because the job requires an ability to climb ladders, a task he is no longer able to do (Tr. 39, 43, 48–49, 50). Plaintiff further testified that he engages in very little activity each day. He does, however, make his bed, watch television, wash dishes, and do a little walking outside (Tr. 45–46, 48). He testified that he can walk up to fifty yards without difficulty (Tr. 46), that he could do a job sitting down (Tr. 38), that he can and does drive approximately 100 miles per week (Tr. 33), and that in April, 1976 he put in 32 hours of work over a two-week period painting shelf boards, a job that did not require long periods of standing (Tr. 36–38). On June 14, 1976, plaintiff's doctor told him that he could go back to work if he would alternate standing and sitting at half-hour intervals (Tr. 43). On June 19, 1976, an orthopedic resident at the Veterans Administration Hospital reported that plaintiff had been advised not to climb, or stand for long periods, but that plaintiff was able to work in situations involving 1 to 2 hours standing (Tr. 116).

At the hearing, plaintiff was wearing a brace on his right leg, a brace that he had been wearing since about mid-April, 1976 (Tr. 40). His last cast had been removed on or about April 1, 1976 (Tr. 40).

Plaintiff testified that he experienced a constant ache in the injured ankle, similar to a toothache (Tr. 44), and that the pain gets sharper at times (Tr. 45). However, plaintiff testified that there was nothing else wrong with him besides his ankle (Tr. 45). He stated that he eats well and sleeps "fairly well" (Tr. 45). Nonetheless, he has not applied for any type of work other than as a painter (Tr. 38) and has failed to respond to the efforts of those with Vocational Rehabilitation (Tr. 38–39).

After reviewing the evidence, the administrative law judge stated:

Based upon all of the evidence of record, the undersigned is unable to find the claimant's injury is of the requisite severity required by the Act. It would appear that if claimant has followed his doctor's advice, he can return to full weight bearing at the present time. Claimant testified the only reason he is unable to return to his employment as a painter is because he can stand on only one foot. His testimony is in direct conflict with the reports of his treating physician who has advised him to resume weight bearing. Certainly, he could do other work for which he would be qualified which would not require continuous standing.

(Tr. 12).

After carefully reviewing the evidence, this Court is firmly convinced that the Secretary's determination that plaintiff was able to return to his former occupation as a house painter is wrong. However, as was noted above, it is not this Court's function to try the case de novo, Klug v. Weinberger, 514 F.2d 423 (8th Cir. 1975), nor is it this Court's function to determine the weight of the evidence or to substitute the Court's judgment for that of the Secretary. Laws v. Celebrezze, supra, at 642. However, this Court must carefully scrutinize the entire record to determine if there exists substantial evidence to support the Secretary's findings. Klug v. Weinberger, supra. After such careful scrutiny, this Court is convinced that the record does not contain substantial evidence to support the Secretary's determination that plaintiff was not so disabled that he could not return to his occupation as a house painter.

This Court first directs its attention to the following finding by the administrative law judge: "It would appear that if claimant has followed his doctor's advice, he can return to full weight bearing at the present time" (Tr. 12). While there does exist evidence to support this finding, that evidence is anything but substantial. The administrative law judge did find that "[t]he doctor advised claimant to begin 25% weight bearing and advance to full weight bearing over the next six weeks" (Tr. 12), and was correct in making this finding (see Tr. 103). However, this report was made on July 31, 1975 (Tr. 103) and certainly should be considered in light of the medical reports made in June, 1975, September, 1975, and January, 1976 describing plaintiff as totally dis-

abled (Tr. 98, 100, 115). In fact, in the January 22, 1976 report, plaintiff's physician stated that plaintiff "will be disabled for at least another 4 months" (Tr. 115). Further, while there was proof that, as of June, 1976, plaintiff could perform a job which required only intermittent standing (i. e., work a half-hour, rest a half-hour) (Tr. 52), there was no evidence whatsoever that plaintiff could work as a painter in such a condition. In fact, the only evidence in the record on this subject makes clear that, in order to be a painter, two good feet were a necessity (Tr. 39, 43, 48–49, 50), because the job required plaintiff to stand for long periods of time and to climb ladders. The evidence was very clear that, as of June, 1976, plaintiff was unable to climb ladders and was unable to stand for any appreciable period of time. This, when combined with the medical report of January, 1976 that plaintiff "will be disabled for at least another 4 months,"[1] compels the conclusion that plaintiff was unable, as of the date of the hearing, to return to his former work as a house painter. Evidence to the contrary can certainly not be deemed "substantial."

■ Plaintiff having shown his inability to work at his former job, the burden shifts to the Secretary to show that there is another kind of substantial gainful activity that claimant could perform. *Russell v. Secretary of Health, Education and Welfare*, 540 F.2d 353, 357 (8th Cir. 1976). In making this showing, the Secretary must produce evidence that, "considering claimant's age, education, work experience and impairment, there are jobs which [he or] she could perform." *Hernandez v. Weinberger*, 493 F.2d 1120, 1123 (1st Cir. 1974); *Beason v. Califano*, No. 75–CV–41–W–4 (W.D.Mo. March 30, 1977), fn. 26. The standard to be applied is not "the standard of the ordinary man or average man . . . [but] the individual claimant himself, with all his personal assets and liabilities." *Drafts v. Celebrezze*, 240 F.Supp. 535, 538 (E.D.S.C.1965); *Beason v. Califano, supra*, at fn. 27.

It having been determined that there is not substantial evidence to support the Secretary's finding that plaintiff is capable of returning to his former job, it is hereby

ORDERED that both plaintiff's and defendant's motions for summary judgment be, and they hereby are, denied without prejudice; it is further

ORDERED that this cause be, and it is hereby, remanded to the Secretary of Health, Education and Welfare for the taking of additional evidence and the making of additional findings on the issue of whether plaintiff can or cannot "considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him or whether he would be hired if he applied for work."[2]

---

1. The Court is, of course, aware that "a 'medical disability' and a 'disability' that qualifies for benefits under the Social Security Act are not necessarily synonymous." *Garrett v. Richardson*, 471 F.2d 598, 603 (8th Cir. 1972). This does not, however, mean that the probative value of a physician's opinion that a claimant is disabled is significantly reduced.

