Steven R. BOULTON, Plaintiff,

v.

Patricia Roberts HARRIS, Secretary of Health and Human Services, Defendant.

Civ. No. C 80–351.

United States District Court, D. Utah, C. D.

May 20, 1981.

---

Karma K. Grimm and Gordon S. Esplin of
the Legal Center for the Handicapped, Salt
Lake City, Utah, for plaintiff.

Ronald L. Rencher, U. S. Atty., Lawrence J. Leigh, Asst. U. S. Atty., Salt Lake City, Utah, for defendant.

## AMENDED ORDER OF REMAND TO THE SOCIAL SECURITY ADMINISTRATION

ALDON J. ANDERSON, Chief Judge.

### 1. INTRODUCTION

This is an appeal from an administrative decision of the Social Security Administration upholding defendant's termination of plaintiff's eligibility for supplemental security income benefits. The adverse decision was rendered by the Administrative Law Judge (ALJ) January 21, 1980. R. 10–15. An appeal to the Appeals Council for the Social Security Administration was denied May 6, 1980. R. 3. Plaintiff thereafter filed this action seeking review of the administrative decision pursuant to 42 U.S.C. § 405(g). The matter was referred to the United States Magistrate for this district. The magistrate, having heard argument and received memoranda on defendant's Motion to Affirm Her Administrative Decision, has filed his Report and Recommendation recommending that the motion be granted. Plaintiff has responded with objections to the Report and Recommendation. The ALJ entered the following findings:

1. The claimant was found disabled within the meaning of the Social Security Act beginning June 1975 due to mental retardation.

2. Beginning at least in March 1979 the claimant's disorder has not been shown to be so severe as to significantly affect his capacity to understand, carry-out or remember instructions or to respond appropriately to supervision, co-workers, or customary work pressures in a routine work setting. Claimant has demonstrated an ability to engage in substantial gainful work.

3. The Claimant is 26 years of age, is physically unimpaired, has obtained a high school degree in special education, reads at approximately a 4th grade level, has had sheltered workshop experience in assembly and sub-assembly type tasks performing at approximately 50% of the standardized production rate and maintains hobbies in photography and stereo.

4. The claimant's full scale Wechsler I.Q. has been tested in March of 1979 at 80 and in September 1979 at 75.

5. Claimant's disability ceased in March 1979 and entitlement to supplemental security income benefits ended with the close of May 1979.

The question presently before the court is whether the findings of the ALJ are supported by substantial evidence. Having considered the administrative record carefully the court is of the opinion that the findings are not so supported and that plaintiff has made a prima facie case that he is disabled.

### 2. FACTS

Plaintiff is a mentally retarded male 27 years of age. He has, apparently, suffered from mental retardation since early childhood. He graduated from Viewmont High School with a degree in special education. R. 45. He had received some vocational training from the Division of Rehabilitation Services and from Columbus Community Center. He was employed as a janitor at Hill Air Force Base in October and November of 1972, but was discharged being unable "to adequately plan, initiate and complete a work schedule encompassing all the tasks he was required to do." R. 104. See R. 81. He was re-enrolled at Columbus Community Center, in March of 1973, in a program of vocational training for the handicapped. He participated in that program until October, 1979, when he was employed by Bendell Manufacturing, Inc. There he was responsible for tapping holes in metal parts for pianos and sanding metal parts. Plaintiff had not actively sought this employment opportunity. It became available because the owner of the company was a neighbor to plaintiff's parents, and was willing to accommodate plaintiff's

handicap. R. 29–30, 40–41. In February of 1980 plaintiff was terminated from his employment with the company. A letter from Delton J. Bettridge, vice-president of Bendell Manufacturing, Inc., R. 105, details the reasons for plaintiff's termination:

> While we have found Steven to be a steady, neat and and [sic] clean, and pleasant person, we find that his handicapping condition precludes him from performing safely and efficiently even some of the most basic steps in our manufacturing process.
>
> We have found that while his motor skills are refined enough to perform some of the operations required, his rate of production is very slow. We have patiently worked with him in this regard but he has been unable to increase his speed even to a very minimum requirement. His rate of production on the very basic operations has been about ⅟₇ of our regular workers.
>
> In addition, his capability to follow the necessary sequence of steps in the manufacturing process is very limited. Operations of more than one or two steps are confusing to him making it unsafe for him as well as economically infeasible. Again, the termination, we feel is directly related to Steven's handicapping condition. We had hoped that he could work into the operation as a safe and productive worker but have found this has not been the case.

Plaintiff's assertions that his handicap effectively prevents him from obtaining substantial gainful employment is buttressed by the testimony, at the administrative hearing, of Wilford Rudert, an instructor at the Columbus Community Center. Mr. Rudert, who holds a degree in psychology, worked with plaintiff during the seven years that plaintiff participated in the programs at the Center. He testified that when plaintiff first arrived at the Center he was given training in functional academics such as the use of a calendar, counting, and the use of money. He was later given training in vocational skills consisting of assembly and sub-assembly work. R. 35.

During the period of vocational training plaintiff spent approximately eight hours a day, five or six hours of which was spent in the sheltered workshop. R. 36. He was paid for the work he did in the workshop, earning between $30 and $60 monthly. R. 72–73. Mr. Rudert testified that plaintiff was referred to the Columbus Community Center because he was unable "to hold employment in a competitive situation and needed training so he could eventually someday enter the competitive labor force." R. 27. His average production rate on assembly and sub-assembly tasks was no more than 55 percent of what a normal person would be able to accomplish. R. 27. The record contains a letter from Mr. Rudert, R. 92, in which he states:

> Steve Boulton has been in the Vocational Training and Placement program at Columbus Community Center since March 9, 1973. During this time Steven has persistently exhibited a behavior that is incompatible with his being able to hold a job in a competitive employment situation.
>
> The problem behavior that Steven exhibits is that he has a compulsion to make modifications in the prescribed method of performing a task when on the job. These modifications usually have nothing to do with the completion of the task (e. g. rearranging the product, sorting the product into various boxes or piles, and performing unnecessary steps to complete the task).
>
> Data shows that Steve's production rate is average only when he is working on a task for a short period of time (i. e., a quarter of an hour or less). As the amount of time that Steven works on the job increases, his production rate begins to decrease. This decreasing production rate is due to Steven's compulsiveness to add extra steps to the assigned task.
>
> The compulsion to do things his own way, according to Dr. Robert Card, is due to Steve's slight autism.

Plaintiff's mother, Marian Boulton, similarly testified at the hearing respecting plaintiff's employability. She stated that

as of February, 1979, she would have considered plaintiff mentally incapable of working. R. 44. She stated that although plaintiff is able to take care of his own personal needs, R. 50, he does not read or write, R. 50, cannot manage money or finances, R. 42, 49–50, and that he has some difficulty with transportation, R. 42. He had, however, learned how to ride a bus alone, including one transfer. R. 42. She stated that he has difficulty carrying out simple tasks at home without "[d]oing his own thing." R. 42–43.

A psychological evaluation of plaintiff was conducted March 16, 1979, by William H. Brown, Ph.D., a clinical psychologist. R. 79–80. He reported that on a Wechsler Adult Intelligence Scale plaintiff had a verbal I.Q. of 69, a performance I.Q. of 97, and a full scale I.Q. of 80. The performance I.Q. being relatively high, Dr. Brown noted that plaintiff possessed a "remarkable facility for specialized functioning," determining that plaintiff's high-level perceptual-motor development "should enable him to perform productively in a wide range of semiskilled occupations." Dr. Brown stated in conclusion:

Mr. Boulton should not be considered for jobs which require independent judgments and decisions. His ability to decide what is proper behavior in every day matters is surely good enough for most situations but he will always need protection from persons who would be ready to take advantage of him.

Mr. Boulton should be supported financially and psychologically until he has been trained to function in the self-responsible manner of which he is capable. Mr. Boulton is capable of becoming at least a marginally self-dependent person.

A second evaluation was performed on plaintiff September 26, 1979, by psychologist Robert D. Card, Ph.D., R. 99–100. On the Wechsler Adult Intelligence Scale plaintiff obtained a full scale I.Q. of 75, composed of a verbal I.Q. of 65, and a performance I.Q. of 95. Dr. Card concluded that plaintiff was a severely retarded individual who, though beginning to function voca-

tionally, will probably always be handicapped socially and emotionally to a very significant degree.

## 3. SCOPE OF REVIEW—SUBSTANTIAL EVIDENCE

The Social Security Act provides that a person who is disabled and who is eligible on the basis of income and resources shall be paid supplemental security income benefits. 42 U.S.C. § 1381a. "Disability" is defined in the Act as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Section 1382c(a)(3)(B) states further:

For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

■ Plaintiff first began receiving supplemental security benefits as a disabled person in June, 1975. His eligibility was terminated following a periodic review of his disability status and determination that he was no longer disabled. The present appeal from the adverse administrative decision is brought pursuant to 42 U.S.C. § 405(g). That section provides that the Secretary's findings of fact shall be conclu-

sive if supported by substantial evidence. *See Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). "Substantial evidence" is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Garrett v. Richardson*, 471 F.2d 598, 599–600 (8th Cir. 1972); *Schlabach v. Secretary of Health, Education and Welfare*, 469 F.Supp. 304, 308 (N.D.Ind.1978). The court's duty, therefore, is to scrutinize the record and determine whether the evidence in support of the ALJ's decision is such that a reasonable person would have relied upon it in finding, as the ALJ did, that plaintiff's disability does not prevent him from performing "substantial gainful activity," the statutory standard. *Garrett v. Richardson*, 471 F.2d at 603. The court must thus look at those facts in the record that detract or negative the findings of the ALJ, and balance them against those facts supportive of his decision. *Schlabach v. Secretary of Health, Education and Welfare*, 469 F.Supp. at 308. This balancing is not for the purpose of resolving conflicts in the evidence. That is the function of the ALJ. Rather, the court must examine the evidence in support of the ALJ's findings to determine whether, as compared with the evidence to the contrary, it is such as could be called "substantial." If reliance has been placed on one portion of the record to the disregard of the overwhelming evidence to the contrary the court is bound to decide against the Secretary. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Thus, as the court stated in *Day v. Weinberger*, 522 F.2d 1154 (9th Cir. 1975): "[I]n determining whether there is substantial evidence to support the examiner's finding a reviewing court must consider both evidence that supports, and evidence that detracts from, the examiner's conclusion. We cannot affirm the examiner's conclusion simply by isolating a specific quantum of supporting evidence." *Id.* at 1156. *See Schlabach v. Secretary of Health, Education and Welfare*, 469 F.Supp. at 306–08.

■ In addition, the evidence must specifically address the claimant's ability to engage in substantial gainful activity. The court in *Terio v. Weinberger*, 410 F.Supp.

209 (W.D.N.Y.1976), observed: "The words 'any substantial gainful activity' must be read in light of what is reasonably possible, and not what is conceivable. Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available." *Id.* at 214. In *Garrett v. Richardson* the court of appeals similarly noted that the activity must not only be "gainful" it must be "substantial," under the Act. 471 F.2d at 603. In *Garrett* the administrative record contained the testimony of a Doctor Woodward that there was no reason why the claimant could not be gainfully employed, "at least in a light to moderate job situation." The record also contained the report of another expert, Dr. Hollinger, who had concluded: "At the present time there is no obvious reason why this patient could not be employed." The court observed that these statements were "simply too general in nature to be acceptable under the substantial evidence rule as proving ability to engage in substantial gainful activity." *Id.*

■■ In the present case the court is similarly persuaded that Dr. Brown's report that plaintiff's "high-level perceptual motor development should enable him to perform productively in a wide range of semi-skilled occupations," and that he is "capable of becoming at least a marginally self-dependent person" does not rise to the level of substantial evidence when compared with the overwhelming evidence to the contrary. Dr. Brown also notes that plaintiff "should be supported financially and psychologically until he has been trained to function in the self-responsible manner of which he is capable." Taken as a whole, Dr. Brown's report can hardly be interpreted as a diagnosis that plaintiff is ready and able to engage in substantial gainful activity. It addresses itself more to plaintiff's potential than to his present abilities. The court acknowledges the determination of both Dr. Brown and Dr. Card that plaintiff has a relatively high performance I.Q., but is of the opinion that, without more, the results of the two evaluations given by these experts and the conclusions drawn therefrom constitute

substantial evidence of plaintiff's ability to engage in substantial gainful activity. With all due respect to the training and experience of these experts, the court believes that conclusions drawn from an I.Q. test are no substitute for those of other trained professionals who have spent years working with plaintiff on a daily basis. That the results of the I.Q. tests may have been subject to misinterpretation is shown by the letter of Arthur K. Thomassen, dated September 19, 1979, of the Division of Rehabilitation Services, Utah State Board of Vocational Education. Mr. Thomassen states: "Review of Steven's records at this time indicate that Steven's average physical endurance and average motor activity give the false impression of his ability to function in competitive employment. His poor memory, lack of concentration, and his inability to plan ahead with comprehension, give doubt to potential employment." R. 101. The record contains ample evidence that plaintiff is not presently employable so as to satisfy the substantial gainful activity standard of 42 U.S.C. § 1382c(a)(3)(A). The fact that plaintiff has been terminated from both jobs that he has held because his handicap prevented his achieving the necessary functional level of efficiency, while not dispositive, is further support for the conclusion that plaintiff is not presently employable in a substantially gainful manner. See 20 C.F.R. § 416.932 (1980). The court holds that the finding of the ALJ that "[c]laimant has demonstrated an ability to engage in substantial gainful work," R. 14, is not supported by substantial evidence in the record.

### 4. BURDEN OF PROOF

■ The court recognizes that plaintiff carries the initial burden of proof to demonstrate that he is disabled. *See Keating v. Secretary of Health, Education and Welfare*, 468 F.2d 788, 790–91 (10th Cir. 1972). Once plaintiff has made out a prima facie case that he is unable to do the work for which he was trained, the burden shifts to the defendants to show that notwithstanding the disability plaintiff could obtain other gainful work and that such specific job

opportunities exist in the national economy. *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980); *Salas v. Califano*, 612 F.2d 480, 482 (10th Cir. 1979); *Hall v. Secretary of Health, Education and Welfare*, 602 F.2d 1372, 1375 (9th Cir. 1979). The court is persuaded that plaintiff has met his burden. He was trained for nearly seven years to do assembly and sub-assembly type work. R. 35. The evidence in the record demonstrates his incapability, because of his mental disability, to obtain substantial gainful employment in the area in which he has been trained. The burden is thus on the Secretary to come forward with specific findings that plaintiff has "the physical and mental capability to perform specified jobs, taking into consideration the requirements of the job as well as claimant's age, education, and background." *Hall v. Secretary of Health, Education and Welfare*, 602 F.2d at 1377. The best way for this to be accomplished is through the testimony of a vocational expert who is qualified to provide specific evidence of plaintiff's capacity to perform substantial gainful work that exists in the national economy. *Wilson v. Califano*, 617 F.2d at 1053; *Salas v. Califano*, 612 F.2d at 483; *Hall v. Secretary of Health, Education and Welfare*, 602 F.2d at 1377; *Garrett v. Richardson*, 471 F.2d at 603.

The court believes that the facts of this case justify a decision to remand it for further proceedings at the administrative level. 42 U.S.C. § 405(g) allows the court "at any time" to order that additional evidence be taken before the Secretary "on good cause shown." Good cause is not a difficult standard to meet. *Hall v. Secretary of Health, Education and Welfare*, 602 F.2d at 1377; *Schlabach v. Secretary of Health, Education and Welfare*, 469 F.Supp. at 309–10. The conclusion of the court that the burden of proof has shifted to the Secretary justifies its further finding that good cause exists for the need for additional evidence. On remand the Secretary will thus not be limited to the record as it presently stands, but will be allowed to adduce new or additional evidence as may be deemed necessary to meet the burden of proof.

Accordingly,

IT IS HEREBY ORDERED that defendant's Motion to Affirm Her Administrative Decision is denied.

IT IS FURTHER ORDERED that the case be remanded to the Social Security Administration with instructions that a hearing be held before an administrative law judge for the purpose of considering the case further in a manner not inconsistent with this order, including the taking of new evidence.