**Calvin C. TILLERY, Plaintiff-Appellant,**

v.

**Richard S. SCHWEIKER, Jr., Secretary, Department of Health and Human Services, Defendant-Appellee.**

No. 81–2044.

United States Court of Appeals, Tenth Circuit.

Aug. 1, 1983.

Earl W. Arnold, Tulsa, Okl., for plaintiff-appellant.

Gabriel L. Imperato, Social Sec. Admin., Baltimore, Md. (Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D.C., Frank Keating, U.S. Atty., Tulsa, Okl., Frank V. Smith, III, Regional Atty., Dept. of Health and Human Services, Dallas, Tex., with him on brief), for defendant-appellee.

Before SETH, Chief Judge, and McWILLIAMS and SEYMOUR, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is a social security disability insurance case. Pursuant to the Social Security

Act, Calvin C. Tillery filed a claim for disability insurance benefits. His claim was administratively denied. Tillery sought, and obtained, a *de novo* hearing before an Administrative Law Judge, who also denied his claim on the basis that Tillery was not disabled within the meaning of the Act. The ALJ's determination became the decision of the Secretary of Health and Human Services when the Appeals Council approved the decision of the ALJ. Tillery then sought, and obtained, judicial review of the Secretary's decision in the United States District Court for the Northern District of Oklahoma. The district court affirmed the Secretary's decision. Tillery now asks that we reverse the judgment of the district court. We affirm.

Tillery, age 47 at the time of the hearing before the ALJ, was formerly employed as an air-conditioning repairman. He quit that employment, claiming that he was unable to continue working because of tinnitus, severe headaches and back pain, and arthritis. Accordingly, he made claim for social security disability benefits.

Regulations direct the Secretary to sequentially evaluate a claim of disability. 20 C.F.R. § 404.1520 sets forth the steps to be followed in evaluating a disability claim. The first step is to determine whether the claimant is currently engaged in "substantial gainful activity." §§ 404.1520(b) and 404.1571–1575. If he is so engaged, he is not disabled within the meaning of the Act, even though he may in fact have some physical or mental impairment.

The second step under the regulations is to determine whether a claimant is "severely impaired" within the meaning of the Act. § 404.1520(c). A person is "severely impaired" if he has a physical or mental impairment which significantly limits his ability to perform "basic work-related functions." § 404.1521. If the claimant is not so limited, he is not disabled within the meaning of the Act, and the matter need not be pursued further.

If the claimant's impairment does significantly limit his or her capacity to perform "basic work-related functions," and such impairment meets the duration requirement and is listed in Appendix 1, the claimant will be found disabled within the meaning of the Act, and the matter not pursued further. §§ 404.1520(d) and 404.1525–1530.

If the claimant suffers from an impairment which does significantly limit his or her capacity to perform "basic work-related functions," but the impairment is not listed in Appendix 1, the administrative search continues and inquiry is made concerning the claimant's "residual functional capacity" and the "physical and mental demands of the work ... done in the past." §§ 404.1520(e) and 404.1545. If the claimant can do the type of work he has done in the past, he is not disabled within the meaning of the Act and his claim will be denied. If the claimant is unable to perform the kind of work he has done in the past, inquiry is next made to determine whether the claimant is able to perform some other form of gainful work in the national economy, considering the claimant's "residual functional capacity," along with his age, education and past work experience. §§ 404.1520(b) and 404.1560–1569. In making such determination, reference is made to the Secretary's promulgated medical-vocational guidelines, which now appear as 20 C.F.R. Pt. 404. Subpt. P, Appendix 2. By use of such guidelines, determination is made as to whether a claimant is, or is not, disabled within the meaning of the Act.

In the instant case, the ALJ conducted a rather thorough hearing, receiving numerous medical reports and taking the oral testimony of Tillery. Tillery, incidentally, was represented by counsel at the hearing before the ALJ. The decision of the ALJ, which was later adopted by the Secretary, is commendably detailed and forms a solid basis for judicial review. The ALJ fully discharged his "duty of inquiry," as referred to by Justice Brennan in his concurring opinion in *Heckler v. Campbell*, —— U.S. ——, 103 S.Ct. 1952, 1959, 76 L.Ed.2d 66 (1983).

As we understand it, the ALJ made "alternative" findings, each of which supported the ALJ's ultimate finding that Till-

ery was not disabled within the meaning of the Act. First, the ALJ found that Tillery's impairments, which he admittedly had, were not sufficiently severe to significantly limit his ability to perform basic work activities, as provided for in § 404.1520. In addition, the ALJ found, by reference to Appendix 2, mentioned above, that, after considering Tillery's maximum work capacity, age, education, and past work experience, Tillery was not disabled. The present appeal will be disposed of on the basis of the ALJ's second, or alternative finding.

The ALJ found, in effect, that Tillery could perform light work, notwithstanding his medically determinable impairments. The ALJ then took into consideration four factors, i.e., Tillery's ability to perform light work, his age, education and work history, and then determined on the basis of the medical-vocational guidelines of Table No. 2 of Appendix 2, that Tillery was not disabled.

Tillery challenges the Secretary's use of the medical-vocational guidelines, as set forth in Appendix 2. This issue has now been resolved by the Supreme Court in the recently announced decision in *Heckler v. Campbell, supra.* In *Heckler,* the Supreme Court upheld the Secretary's use of the medical-vocational guidelines in determining whether a claimant is disabled within the meaning of the Act, and held that the guidelines do not conflict with the Act nor were they arbitrary or capricious.

In view of the recent pronouncement of the Supreme Court in *Heckler,* the only issue remaining for our consideration is whether the Secretary's finding that Tillery, notwithstanding his physical problems, could still perform light work is supported by substantial evidence. If such is so supported, it should not be disturbed on judicial review. 42 U.S.C. § 405(g). *Bradley v. Califano,* 573 F.2d 28, 31 (10th Cir.1978).

Our study of the record before the ALJ leads us to conclude that his finding that Tillery can perform light work is supported by substantial evidence. Dr. Muck, a physician at the Veterans Administration, and Dr. Dandridge, an orthopedic surgeon, de-

termined that Tillery suffered from osteoarthritis, but was capable of performing light work-related functions. Dr. Zollinger, an ears, nose, and throat specialist, examined Tillery and determined that his hearing problem was not serious. He reported that it was not accompanied by any hearing loss or vertigo, and Tillery had not been subjected to any loud noises. Dr. Hathaway, a specialist in internal medicine, diagnosed the claimant as suffering from, among other things, osteoarthritis. However, Dr. Hathaway concluded that Tillery was disabled.

In our view, the evidence is such as to permit varying inferences. The ALJ came to grips with the problem, and, on such state of the record, for us to disturb his finding would simply put us into the fact-finding business. This we should not do.

Some comment on the medical reports of William S. Dandridge, M.D., is in order. Dr. Dandridge examined Tillery some six months prior to the hearing before the ALJ. In the report of his examination, Dr. Dandridge opined that although Tillery was incapable of performing heavy or moderate work, he could nevertheless perform "light or sedentary types of work." This medical opinion was commented on by the ALJ in his decision, and, no doubt, was at least partially relied on by the ALJ in his resort to the medical-vocational guidelines.

As indicated, the Appeals Council upheld the decision of the ALJ. Thereafter, counsel for Tillery submitted to the Appeals Council a second medical report of Dr. Dandridge in which the doctor revised his earlier opinion and stated that Tillery could *not* perform light or sedentary work. The Appeals Council, after considering Dr. Dandridge's second report, reaffirmed its earlier action, upholding the decision of the ALJ. As concerns Dr. Dandridge's updated medical opinion, the Appeals Council made the following comment:

The Appeals Council has carefully considered the material which was forwarded. However, it was essentially cumulative in nature, and provided no significant information in addition to that

which was already of record, particularly this physician's prior report dated September 20, 1979 (Exhibit 15). Although Dr. Dandridge's recent conclusion that you could not perform any type of labor was taken into consideration, Social Security Administration Regulations provide that the weight to be given to such conclusions depends upon the extent to which they are supported by specific and complete clinical findings and are consistent with the other evidence of record. In your case, the record as a whole does not disclose the presence of a condition of such severity as to preclude you from performing substantial gainful activity. Therefore, the Council has concluded that modification of its prior action is not warranted. Accordingly, the hearing decision stands as the final decision of the Secretary.

We find no error in the handling of Dr. Dandridge's second report by the Appeals Council. Such report did *not* require the Appeals Council to reverse its prior action.

The district court did not err in affirming the Secretary's decision. Therefore, judgment is affirmed.