**Richard L. ROYCE, Plaintiff,**

v.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES, SOCIAL SECURITY ADMINISTRATION, Defendant.**

No. C–84–871G.

United States District Court, D. Utah, C.D.

Aug. 16, 1985.

Kathryn Denholm, Salt Lake City, Utah, for plaintiff.

Gregory C. Diamond, Asst. U.S. Atty., Salt Lake City, Utah, for defendant.

MEMORANDUM DECISION AND ORDER AFFIRMING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE AND REMANDING CASE TO SECRETARY FOR FURTHER PROCEEDINGS

J. THOMAS GREENE, District Judge.

This matter came on regularly for hearing on July 31, 1985, on Objections to Magistrates Report and Recommendation. The Objections were filed on behalf of the defendant Margaret M. Heckler, Secretary of Health and Human Services. Gregory C. Diamond, Assistant U.S. Attorney for the

District of Utah, appeared on behalf of the said defendant, and Kathryn Denholm appeared on behalf of plaintiff. Counsel for both parties had filed memorandums of law with the Court, and each presented extensive oral argument, after which the matter was submitted for decision by the Court and taken under advisement.

The Court independently has reviewed the entire file, documents and record in this case, including the said Report and Recommendation of the United States Magistrate dated June 12, 1985, and the Decision of the Administrative Law Judge dated April 24, 1984. Based upon a consideration of the entire record and all matters contained therein, and the Court being fully advised, the Objections to Magistrate's Report and Recommendation are herewith denied, and the decision of the Secretary is remanded for further proceedings as directed in the Magistrate's Report. The Court finds no substantial evidence for the Administrative Law Judge's finding of no severe impairment of disability as that term was construed by the Magistrate.

## BACKGROUND FACTS

The plaintiff, Richard L. Royce, filed an application for Supplemental Security Income under Title II of the Social Security Act on April 27, 1983, alleging that he became disabled in November of 1982 due to conditions consisting of arthritis, nervous disfunction, hearing loss, back injury and amyotrophic lateral sclerosis (ALS), a progressive wasting neuromuscular disease. The plaintiff's application was denied initially and upon reconsideration. Claiming that he met the insured status requirements of the Social Security Act, the plaintiff requested and received an administrative hearing. The Administrative Law Judge (ALJ) determined that the plaintiff could not meet his burden of establishing a prima facie case of disability because he could not satisfy step two of the Health and Human Services Regulations, a showing of "severe" impairment as defined by the Regulations. *See* 20 C.F.R. § 404.-1520(c) (1984). The Secretary adopted the

ALJ's decision as final and the plaintiff sought judicial review under 42 U.S.C. § 405(g) (1982).

The United States Magistrate carefully reviewed the record, the pleadings on file and the applicable law to resolve the two issues presented: (1) whether the Secretary's decision was made in accordance with the proper legal standards; and (2) whether the Secretary's decision was supported by substantial evidence. After construing narrowly the "severity" requirement of step two, the Magistrate determined that there was not substantial evidence to support the Secretary's decision. The defendant objected to the Magistrate's Report and Recommendations because of the Magistrate's narrow construction and interpretation of the "severity" requirement of step two, and the Magistrate's finding of no substantial evidence to support the Secretary's decision.

## CRITERIA FOR DETERMINING DISABILITY

Title 42, Section 423 of the United States Code provides that every individual who is insured for disability insurance benefits, is under sixty-five years of age, has filed application for disability insurance benefits and is under a "disability" is entitled to disability insurance benefits. [42 U.S.C. § 423(1)(A)–(D) (1982).]

Pursuant to the United States Code, the Secretary has prescribed regulations setting forth the criteria for determining an individual's inability to engage in substantial gainful activity, i.e., a disability. Title 20, Section 404.1520 of the Code of Federal Regulations establishes a five-step sequential analysis for evaluating disability within the meaning of the Social Security Act. *Step one* requires a determination of whether the Claimant currently is engaged in substantial gainful employment. If the Claimant is so employed, the inquiry ends without regard to steps two through five. If he is not so employed, *step two* requires a determination of whether the Claimant has a severe impairment. If the Claimant has a severe impairment, the inquiry con-

tinues to *step three*, which requires determination of whether the impairment meets or equals an impairment listed under Appendix 1 to part 404, subpart P of Title 20 of the Code of Federal Regulations. If it does, the disability is approved. If the impairment is not a "step three impairment," *step four* requires a determination of whether the Claimant can engage in past relevant work. If he is able to return to his past relevant work, the claim is denied. If he is unable to return, *step five* requires a determination of whether the Claimant is able to engage in other forms of substantial gainful activity, in light of his age, education, and prior work experience. The claim is approved if he is unable to engage in other substantial gainful activity. *See* 20 C.F.R. § 404.1520(a)–(f) (1984).

■ By establishing steps one through four, a Claimant makes a prima facie showing of disability, and at that point, the burden shifts to the government to show that under step five the claimant is able to engage in other forms of substantial gainful activity in light of his age, education and prior work experience. *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir.1985).

### STANDARDS FOR DETERMINING SEVERITY OF IMPAIRMENT: STEP TWO

■ A severe impairment is an impairment or combination of impairments which significantly limits one's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a) (1984). Basic work activities are the "abilities and aptitudes necessary to do most jobs." The Regulations give non-exclusive examples of basic work activities:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting. *Ibid.* § 404.1521(b).

It is clear from the authorities cited herein that vocational factors of age, education and prior work experience are not considered at this step, and that only general activities which are required for most types of work are to be considered.

The Tenth Circuit Court of Appeals has adopted and applied the five-step sequential process, and has defined the severity test applicable to step two as follows:

The second step under the regulations is to determine whether a claimant is "severely impaired" within the meaning of the Act. Section 404.1520(c). A person is "severely impaired" if he has a physical or mental impairment which *significantly limits* his ability to perform "basic work-related functions." Section 404.1521. If the claimant is not so limited, he is not disabled within the meaning of the Act, and the matter need not be pursued further. (Emphasis added)

*Tillery v. Schweiker*, 713 F.2d 601 (10th Cir.1983). Accord, *Donna Elliott v. Heckler*, Slip Opinion filed April 30, 1985, Case No. 84–2055 (10th Cir.1985), in which case, the test was thusly stated:

An impairment is not severe if it does not limit the claimant's physical or mental abilities to perform the basic work activities of most jobs. *Id.* § 404.1521.

We consider that the lack of reference to the modifying word "significantly" in *Elliott* was not an intentional omission since the Court specifically referenced and clearly followed the *Tillery* case.

The United States Magistrate observed the applicability of that basic test, but interpreted it narrowly. The Magistrate stated:

According to the Secretary's regulations, an impairment is not "severe" if it does not significantly limit the claimant's physical or mental abilities to do basic work activities.

\* \* \* \* \* \*

As explained above, a "severe" impairment is one which significantly limits the claimant's abilities to perform basic work activities. 20 C.F.R. 404.1521(a) (1984). The regulations do not define "significantly", so the courts should give the word its common, accepted meaning. The dictionary definitions of "significant" include "having a meaning" or "deserving to be considered". The antonym of "significant" is "meaningless". Therefore, under a narrow construction, an impairment is severe if the limitation it places on a claimant's ability to perform basic work activities is not meaningless. (Magistrate's Report 15 4, 13.) In adopting the foregoing narrow construction of the severity test, the United States Magistrate followed the definitional approach of Judge Winder in *Basso v. Schweiker*, Case No. C81–0948 (USDC—Ut; Winder, J—May 6, 1983), and the approach taken by the Fifth and Eleventh Circuits, as set forth in *Brady v. Heckler*, 724 F.2d 914 (11th Cir.1984) wherein the Court stated that:

> ... an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. *Ibid* at 920. (See also *Jason v. Heckler*, 767 F.2d 82 (5th Cir. 1985)

■ It is claimed that the Magistrate misconstrued the severity test. We do not think so. It is true that the *Elliott* case was not called to the attention of the Magistrate and that the Magistrate was in error in asserting that the Tenth Circuit had not upheld or denied the severity regulation. (See page 10 of the Magistrate's Report.) However, the Magistrate did not abandon or reject the test, but merely construed it narrowly. The Tenth Circuit has not defined the meaning of "significant" as that term modifies the limitation upon ability to perform basic work related functions in determining whether a person is "severely impaired." It is very clear from *Elliott*, however, that the Tenth Circuit rejects vocational factors in the determination of se-

verity, and that the Court regards consideration of inability to return to past work in making a severe impairment determination is "without legal basis." (*Elliott v. Heckler* at p. 4) It is true that the Magistrate in the case at bar discussed at some length possible challenges to the severity regulations. It is not clear, however, that the Magistrate adopted the argument of plaintiffs in the case to the effect that the Secretary should have considered vocational factors including age, education and previous work experience in evaluating the second step severity determination. To the extent that any aspect of the Magistrate's opinion is based upon a conception that the ALJ should have taken into account such vocational factors, such as the probability that plaintiff could not work as a welder as he had done in the past, the opinion should be and is disapproved. But we think that the Magistrate's narrow construction of severity was not necessarily founded upon such vocational factors, but rather upon considerations of general activities applicable to various types of work. In all events, we agree with the Magistrate's narrow definitional approach taken as to the severity test, and do not regard that construction to be at odds with the rulings of the Tenth Circuit as to the scope of the severity determination. Accordingly, we reject the contention that the Magistrate applied improper standards here.

### SUBSTANTIAL EVIDENCE

■ The remaining question is whether, under the definitional approach taken by the Magistrate as to the severity test as set forth above, there is substantial evidence in the record to support the ALJ's finding of no severe impairment and thus his termination of the sequential evaluation at step two. Where a claim is denied at step two because of a finding that the impairment, impairments or combination thereof is not severe, the proper inquiry is whether that conclusion is supported by substantial *medical* evidence. *See, e.g., Lofton v. Schweiker*, 653 F.2d 215, 217–18 (5th Cir. 1981). If the Secretary's findings are supported by substantial medical evidence,

they are conclusive. *Nieto v. Heckler*, 750 F.2d 59 (10th Cir.1984); *Cagle v. Califano*, 638 F.2d 219 (10th Cir.1981).

 Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) [citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938) ]; *Boulton v. Harris*, 518 F.Supp. 828, 833 (D.Utah 1981). The Court's duty, therefore, is to review the entire record to determine whether the evidence supporting the ALJ's decision is such that a reasonable person would have relied upon it in finding that the Claimant's impairments were not severe within the meaning of the Social Security Act. The Court must compare those facts in the record that detract from the ALJ'S findings with the facts that support his decision. This "balancing" is not to resolve conflicts in the evidence, which would supplant the function of the ALJ, but rather the purpose is to determine whether the evidence in support of the secretary's decision can be considered "substantial." *Boulton v. Harris, supra.* If the ALJ has relied on one portion of the record while disregarding overwhelming evidence to the contrary, the court must decide against the Secretary. *Id.* [citing *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir.1964) ]. In other words, the Court must examine the record as a whole and will not affirm the Secretary's decision simply by identifying a specific quantum of evidence supporting it. *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir.1983).

 After reviewing the entire record, including the claimant's medical records, the Court finds that there was not substantial evidence to support the ALJ's determination of no severe impairment.

It is true that the medical evidence shows that the plaintiff is alert, his memory is adequate and his mental status is normal. (R. 73, 95, 105–6, 111, 118.) The plaintiff's gait is also normal. (R. 73, 102, 106, 111). But the combined effect of the Claimant's impairments demonstrate that his ability to perform basic work-related activities is significantly limited. In this regard, it is evident from the record that the Claimant suffers from a degenerative disc disease with multilevel spondylosis. This was verified by radiology reports. (R. 90, 121.) A treating chiropracter stated that Mr. Royce should not engage in activities that would require lifting more than 20 pounds, prolonged standing or extreme motion of the lumbar spine. Prolonged standing, bending, twisting motions of the low back and lifting would aggravate his degenerative disc disease. (R. 131). Additionally, the medical evidence shows that the Claimant's hearing is impaired. He has a mild to severe sensori-neural hearing loss on the right side and profound sensori-neural hearing loss on the left side, and therefore requires bilateral hearing aids. (R. 94–94). The Claimant's ability to see may also be limited. The medical evidence shows that he has a history of using strong lenses to see. (R. 73). That alone would not necessarily constitute a limitation, but as early as March of 1983, the Claimant's physicians observed muscular fasciculations around Claimant's eyes. (R. 71). One doctor expressed concern over Claimant's ability to read, given the prominent nysgasmus. (R. 106).

In June and August of 1983, a neurologist examined the Claimant because he was suffering from mild fasciculations. The doctor concluded that there was no neurologic cause of the twitching symptoms and that they did not interfere with his work. The neurologist, however, evaluated the Claimant only for his possible neurologic problems. In September of 1983, after his condition worsened, the Claimant spent nine days in the hospital undergoing testing for a possible motor neuron disease. (R. 110–130). This muscle twitching ranged from mild to severe and involved all parts of his body, including his face, arms, legs, thorax and abdomen. He suffered from extreme weakness of the right arm, secondary to the motorneuron disease, "probably amytrophic lateral sclerosis" (ALS). ALS is a progressive and often fatal motor neuron disease, characterized

by muscle fasciculations, muscular weakness and atrophy.

 The attending physicians concluded from the results of their examinations that the plaintiff was totally disabled from working for an undefinite period. (R. 129–30). Although the ALJ need not rely on the attending physicians' opinion as to disability, he should not disregard the medical evidence altogether. Certainly, as the Magistrate noted, extreme weakness of the right arm and fasciculations in other parts of the body would significantly limit a Claimant's ability to lift, push, pull, carry or handle. Each of the Claimant's problems, considered separately, would limit his ability to perform many of the basic work-related activities set forth in Section 404.-1521(b), but might not compel a finding of severe impairment. But Claimant's impairments, considered in combination, clearly would limit his ability to perform the basic work-related activities discussed herein and demonstrate that there was substantial evidence to support findings of severe impairment. Where there is adequate medical evidence to support a physicians' opinion, the opinion is entitled to great weight. *Byron v. Heckler*, 742 F.2d 1232 (10th Cir. 1984); *Broadbent v. Harris*, 698 F.2d 407 (10th Cir.1983).

It may well be that under a broad as well as narrow interpretation of "severe impairment" there was not substantial evidence to support the finding of the ALJ. In all events, however, the medical evidence shows that the limitation on Claimant's ability to perform basic work-related activities was not "meaningless" under the narrow interpretation. The Court finds, therefore, that the evidence in the record to support the ALJ's determination of no severe impairment does not rise to the level of "substantial" when compared with the overwhelming evidence to the contrary. Accordingly, the recommendation of the Magistrate is adopted and the case is remanded to the Secretary for further determination.